## Court of Appeals.

*October*, 1888.

### PEOPLE *v.* McQUADE.

CHALLENGES TO JURORS.—COMPETENCY OF JURORS.—EVI-
DENCE.—CODE CRIM. PROC. §§ 376, 377, 385, 455,
456, 517, 542.

The order in which peremptory challenges to proposed jurors are
taken by the defense and the prosecution respectively on a crim-
inal trial is a matter of substance; and section 385 of the Code
of Criminal Procedure, so far, at least, as it requires the people
to first exercise the right of peremptory challenge, is imperative
and not directory.

Every statutory provision intended for the benefit of the accused,
confers a substantial right, which cannot be disregarded with-
out his consent.

To render a juror competent, his declaration that his opinion or im-
pression will not influence his verdict, and that he can render
an impartial verdict according to the evidence, must be un-
equivocal, not qualified or conditional. It is not enough that
detached language may seem to meet the statutory requirement,
.if, on construing the whole declaration, it is apparent that the
juror is not able to express an absolute belief that his opinion
will not influence his verdict.

A defendant is not precluded from availing himself of an exception
to the ruling of the court on a challenge for cause, by the fact
that when the jury was sworn he had still peremptory challenges
unused. The cases of People *v.* Casey, 96 *N. Y.* 115; 2 *N. Y.*

*Crim. Rep.* 194; and People *v.* Carpenter, 102 *N. Y.* 238; 4 *N. Y. Crim. Rep.* 177, limited.

A juror is not rendered incompetent to sit because he is acquainted with counsel in the case, and has advised with him on some occasion not connected with the case on trial.

An exception may be taken by the defendant to a decision of the court allowing a challenge to a juror who, on the facts proved, was a competent and legal juror.

There must be either a legal cause or a peremptory challenge to justify setting aside a juror properly drawn. The court cannot arbitrarily and without cause set aside a competent juror.

Proceedings on challenges to jurors who participated in the verdict must be incorporated in the judgment roll, and decisions may be reviewed on exceptions as of course; but, if the defendant desires a review of his exceptions where the challenges were sustained, he must incorporate them in a bill of exceptions, to be settled and annexed to the judgment-roll.

*It seems,* that the erroneous exclusion of a single juror from the panel by mistake or inadvertence, where it can be fairly inferred that no injury has resulted to defendant, may be disregarded by the appellate court under section 542 of the Code of Criminal Procedure.

Upon the trial of defendant for bribery the prosecution were permitted to prove that of certain persons stated by an accomplice to have constituted a criminal combination in regard to the bribery with defendant, one of them had been indicted for the bribery and not brought to trial, and that others were then, and had been for a long time, absent from the jurisdiction, and were residing in Canada. *Held,* that this evidence was incompetent either to corroborate the accomplice or for any other purpose.

The prosecution also produced evidence of certain advice given by one of the co-conspirators to another, two years after the consummation of the conspiracy, as to how he should testify in regard thereto before an investigating committee, and, in pursuance of which it was alleged that the accomplice swore falsely before the committee. *Held,* that such testimony as to the consultation between the two conspirators was inadmissible against defendant, he being no party thereto.

Appeal by defendant Arthur J. McQuade from a judgment of the General Term of the Supreme Court in the First Department, of May 18, 1888, affirming a judgment of the Court of General Sessions of the Peace for the City

and County of New York, Hon. FREDERICK SMYTH, Recorder, presiding, entered upon a conviction of defendant of bribery.

The facts in the present case in their main features are the same as in the cases of Jaehne, O'Neill, and Sharp, all indicted, tried, and convicted of the same offense, and are set forth in detail in the report of People *v.* Sharp, at General Term ; see 5 *N. Y. Crim. Rep.* 393. See also People *v.* Jaehne, 4 *N. Y. Crim. Rep.* 478 ; People *v.* O'Neill (at General Term), 5 *Id.* 302 ; People *v.* Sharp (in the Court of Appeals), *Id.* 569.

The indictment in the present case charged in substance that in the year 1884, the defendant was a member of the Board of Aldermen in the city of New York, and as such, a member of Common Council of that city ; that in the month of August of that year there was pending before said Board of Aldermen a certain application or petition of a corporation known as the Broadway Surface Railroad Company, for the consent of said Board, as provided by chapter 252 of the Laws of 1884, to construct and operate a railroad on the street known as Broadway, in the city of New York, and that the defendant agreed to accept a bribe from some person to the Grand Jury unknown, to influence his vote as an alderman upon the said measure thus pending as aforesaid before the said Board of which he was a member.

This indictment was in all respects similar to that against Jaehne, which will be found in full in 4 *N. Y. Crim. Rep.* 480.

After the conviction of defendant, an appeal was taken by him to the General Term, where the conviction was affirmed, the following opinion being written :

BRADY, J.*—The defendant was placed upon trial the second time ; the jury first impaneled having disagreed. The

---

* Although the judgment of the General Term is reversed by the present decision of the Court of Appeals, it is thought advisable for

charge against him and others had created great attention, and the publications in regard to it were numerous, including the evidence or portions of it. Many jurors were examined before those herein were declared to be competent, and some exceptions were taken to the rulings of the learned recorder, made in regard to several of the jurors rejected as well as those accepted. Two of the latter, Ottenburg and Davis, had formed opinions prior to the trial, and had read the published evidence, especially Davis, who read it with particularity, and the condition of mind of each rendered them clearly incompetent under the decision in Greenfield *v.* People (74 *N. Y.* 277), notwithstanding their declaration that they could fairly try the defendant, and, in spite of the opinion, render a fair and impartial verdict upon the evidence. The distinction made by the court of last resort, between opinions based upon statements made under oath and spread before the persons affected in the shape of testimony, and those resting upon the unsolemnized, unverified talk of people, is clear and just. The court said, "We are of the mind that one who has formed an opinion from the reading of a report, partial or complete, of the criminatory testimony against a prisoner on a former trial, however strong his belief and purpose, that he will decide the case on the evidence to be adduced before him as a juror, and will give an impartial verdict thereon, unbiassed and uninfluenced by that impression, cannot be readily received as a juror, indifferent towards the prisoner and wholly uncommitted." The proof of bias in that case was not stronger than that herein affecting the competency of the jurors named; and applying the just doctrine of the case cited, which was quoted with approval in Balbo *v.* People (80 *N. Y.* 491), those jurors should have been rejected. The error, however, is not fatal, for the reason that the defendant had,

several reasons to give it in full. It discusses some questions untouched by the Court of Appeals, and gives a fuller account of the proceedings on the trial than is contained in the opinion of the latter court.—ED.

when the jury were about to be sworn, four peremptory challenges, and he could have protected himself by the use of two of them from the apprehended injustice of the acceptance of the objectionable jurors.

Such is the rule established by the case of People v. Casey (96 N. Y. 115; 2 N. Y. Crim. Rep. 194); and People v. Carpenter (102 N. Y. 238; 4 N. Y. Crim. Rep. 177). It became the duty of the defendant, in other words, to shield himself from injury by challenging the jurors named peremptorily.

The other exceptions springing from this branch of the trial are not deemed of sufficient importance to require particular consideration. It may be said, nevertheless, in passing, that the court is undoubtedly invested with the power of determining whether a juror possesses the qualifications demanded by section 1079 of the Code of Civil Procedure, and when that jurisdiction is employed and is complained of, it must clearly appear that an error was committed in rejecting the juror.

The subject necessarily involves a large degree of discretion, and it would be difficult, if not impossible, to put upon the record such a portraiture of the rejected juror and his mental fitness as that presented to the trial justice.

Many exceptions were taken during the trial, and numerous are those relating to the charge of the learned recorder, and to the refusals to charge as requested. The conviction of the defendant depended upon the evidence of the witnesses Duffy and Fullgraff and their corroboration.

They were accomplices and had confessedly committed willful and deliberate perjury. The defendant's counsel were clearly alive to this feature of the prosecution, and with great ingenuity, zeal and ability sought to shield their client from the wrong which they feared might be accomplished through this testimony. Every available principle of evidence affecting such persons prejudicially was invoked in all the modes which devoted skill and research could suggest, and indeed this may be said of all the *quasi* objection-

able features of the prosecution viewed from their stand-point. People gave evidence of the absence of several of the persons implicated in the offense charged against the defendant, persons who had acted in concert with him, to accomplish the object in view and who were absent from the State.

The objection to this evidence was general and without specification of particular ground, and such objection was overruled. The admission of this evidence was proper for the purpose of showing why the people could not call these persons as witnesses, and if the attention of the court had then been asked to so limit the evidence, it is more than probable, from what subsequently occurred, that this motion would have been granted, and it could not then have been said that it stood upon the record admitted generally in the case, and for the purpose of corroborating the statements of Duffy and Fullgraff in reference to the illegal combination in which the defendant was implicated.

This feature of the case was nevertheless changed by the direction of the learned recorder, that the counsel for the prosecution should not in his address to the jury comment upon the evidence, and it arose in this way, as it appeared on the record.

General Tracy then summed up the case to the jury on behalf of the defendant, and Colonel Fellows on behalf of the people, and in the course of his remarks to the jury said: "There is another circumstance which corroborates this testimony, and that is, the absence of a number of persons implicated by the story."

Q. When did they flee; where did they go?

*Mr. Tracy.*—We object to that; we object to the counsel commenting upon the absence of other parties.

THE COURT.—Leave that out.

*Col. Fellows.*—Your honor, it is proved.

THE COURT.—I know that.

*General Tracy.*—I object to—

THE COURT.—It is objected to by the defendant, and I will rule it out.

*Col. Fellows.*—I agree with the ruling of the court. What has been proved by that? That if these men were away they went away long before Fullgraff and Duffy told that story ; that much, at least, is in evidence here.

*Mr. Tracy.*—I except to that.

THE COURT.—I don't know that you can except to anything that I did not rule upon ; I don't know that there is any rule of law by which you can do it.

*Col. Fellows.*—I will leave that here. The court thinks that it had better not be commented upon, and it is in evidence for what it is worth.

It was consequently ruled out of the case, and formed no longer any part of the evidence to be considered by the jury.

Even less than what was declared in this manner by the recorder was held to strike out certain evidence to which objection had been made in the case of Wooley *v.* Grand Street R.R. Co., 83 *N. Y.* 121–130.

What the district attorney said in the remarks afterwards made by him, did not affect or change the decision of the recorder, for the latter in no way modified the ruling which he had made excluding the evidence from the consideration of the jury, and as no further comment was made upon the evidence, the jury must have understood from what had transpired, that this evidence was no longer before them.

This incident was not, however, the only one connected with the subject, for the defendant requested the learned recorder to charge :

*Fifty-third.* That upon this trial the jury had no right to consider the fact that certain of the aldermen alleged to have been in the supposed corrupt combination are now out of the jurisdiction of this court. That such fact, if true, has no bearing upon the guilt or innocence of this defendant, and must be entirely disregarded by the jury.

This was refused, and an exception was duly taken. The

request, even if the evidence in question had been before the jury, is too broad, and for that reason must fail. The proposition that the jury had no right to consider the fact that these aldermen were out of the jurisdiction of the court was decidedly incorrect. They had the right to consider it for the purpose expressed, but no other, and therefore that part of the request was bad in form and substance. The subsequent part of it is equally faulty, for while it correctly states that the evidence mentioned has no bearing upon the guilt or innocence of the defendant, it requires the statement to be made to the jury that it must be entirely disregarded.

If the words "and they must be entirely disregarded by the jury" had been omitted, the request would have been less liable to the criticism now made upon it, although it would still be subject to the censure that it contains *in limine* an erroneous legal proposition. The defendant doubtless wished the court to say to the jury what should have been said to them,—namely, that the absence of the aldermen referred to had no bearing upon the guilt or innocence of the defendant,—but the request involved more than this, and fails by force of its own weight. It is well settled that a request must be so framed as to contain no faults or erroneous doctrine. It is not the duty of the courts to dissect requests and so conform them as to make them unobjectionable. If they essayed to do this it would doubtless meet objections just so formidable as those which are presented under the prevailing system. It is equally true that the value of a request should not be destroyed by hypercritical analysis, and should be preserved in all its vigor when it can be without impugning upon well settled rules which are the outcome of deliberation, learning and experience. Although it is not intended to assert that the learned counsel for the defendant designed to do so in this case, it sometimes happens that a request is made obscure or involved in the hope that something may spring from it in the future, which will be serviceable if its main features fail

to accomplish the desired result, a result, it must be apparent, which will be modeled according to the impression made upon the minds called upon to review the ruling with regard to it and to declare its legitimate purpose and effect.

The learned recorder was also requested to charge that if the jury did not believe the evidence of Duffy and Fullgraff, they must acquit. This is, however, the negative only of what had been already charged, namely, that if these witnesses were believed and were corroborated, the evidence would be sufficient to warrant a conviction. It was patent to all that the verdict of guilty, if pronounced, must rest upon the truthfulness of the stories told by these witnesses.

It was not contended or assumed by counsel or court, that the defendant could be convicted, striking their testimony from the case, or discarding or discrediting it. Their evidence alone presented the starting point in the alleged corrupt agreement around which the other facts and circumstances clustered, and gave it confirmatory strength if believed to be true. Indeed it may be said that when full scope and full credence was given it, and it was corroborated, a conviction might follow as its ultimate, inevitable result, unless some substantive and independent defense were shown, while the opposite conclusion must ensue, if it were not thus treated and cherished. The charge on that question fully presented that view, and the jury could not have misunderstood it. It may be said that the negative proposition should have been charged, in order to limit the investigation by the jury to the well defined and certain limits of the other evidence; but this, though it would have been eminently proper, was not absolutely essential, either to the full discharge of judicial duty, or for the protection of the defendant's rights.

We must assume that juries possess some intelligence. Personally, I have great confidence in that tribunal, and when told that an affirmative result depends upon their be-

lief of witnesses named, cannot fail to understand that dis-
belief must work out the converse and negative conclusion.

The substance of the request was put in another form
as follows: Seventeenth. That if the jury, upon a full
consideration of the whole case, do not believe that the wit-
nesses, Fullgraff and Duffy, are worthy of credit, it is their
duty to reject tneir evidence and acquit the defendant.

THE COURT.—I refuse to charge other than I have
charged; but the same observations apply to it as to the
other request.

The learned recorder was also requested to charge as fol-
lowe, and declined to do so except as charged.

*Twenty-first.* That if the jury believe that the evidence
introduced by the prosecution and relied upon to convict is
of doubtful credibility, the previous good character of the
defendant, clearly established by uncontradicted evidence,
may, in itself, be sufficient to create a reasonable doubt of
the defendant's guilt, entitling him to an acquittal.

THE COURT.—I refuse, except as I have charged.

What he said to the jury on the subject of good charac-
ter was, the defendant has introduced evidence of, and it is
conceded in this case by the people that he is a man who
has heretofore borne a good character. In all criminal
cases evidence of good character is to considered and
weighed, and given its proper effect by a jury. While evi-
dence of good character of itself does not tend to prove that
a man is not guilty of an offense, it is to be taken into con-
sideration, and given all the weight which a jury believe
it is justly and properly entitled to; and in a case where
the evidence of good character has not been introduced, and
where a jury may be satisfied of the guilt of the person
charged, evidence of good character, if introduced, will of
itself sometimes raise that presumption of reasonable doubt
to the benefit of which the defendant is entitled. But, in
weighing evidence of good character, a jury should be care-
ful to remember that all men at some time in their lives
have been men of good character, and that men of previous

good character have been known to commit some of the gravest crimes known to the law. However, the law, in its humanity, says that that evidence is to be received and considered by the jury, and given all the weight that they think it justly and properly entitled to, and no more. It cannot be said that the remarks of the learned recorder embraced the exact proposition contained in the request, but they did nevertheless present all the favorable elements created by proof of good character. He said: "In all criminal cases, evidence of good character was to be con sidered and weighed, and given its proper effect by a jury;" and continued, saying: " That such evidence would of itself sometimes raise a presumption of reasonable doubt, even when the jury were satisfied of the guilt of the person charged."

He concluded by saying further, as we have seen, that "the law, in its humanity, says that the evidence is to be received and considered by the jury, and given all the weight that they think it justly and properly entitled to, and no more."

The other observations, though correct in substance, might have been omitted from the charge. They are not exceptionable, however, inasmuch as the effect of proof of good character was distinctly left to the jury. and the statement of the learned recorder as to forfeiture of character by crime embraced nothing more than is present to the human mind as the result of observation and experience.

There is necessarily an end to good character when the person who bears it commits a crime, but good reputation is inconsistent with the probability of transgression, and hence it may be invoked to overcome facts and circumstances suggestive of guilt. This proposition was stated to the jury, as we have seen, when the learned recorded said, proof of good character might create a doubt even where the jury were satisfied of the guilt of the person accused. The objection to what was said seems to concentrate in the form in which it was expressed, and not in the substance.

Good character always is the ally of the accused, protecting him when endanged by well-founded suspicions; indeed it may be the only defense which he can successfully interpose against accusation, and it should not be lightly treated, but given its full effect and without comment, either designed or calculated to weaken its force.

The rule which made it important and valuable was formulated by judges of experience and observation, who well knew that good character prevailed until crime was committed, and that grave crimes were perpetrated by men of previous stalwart reputations, and it has become a maxim almost sacred in the law. If the full measure of its benefit be not given by proper expression to the jury, the accused is wronged and should have redress, particularly, where the proof against him is of prejured witnesses—perjured on their own confessions.

These observations are indulged in lest it should be thought the importance of good character as a factor in the defence was not appreciated. It remains only to say, with reference to them, that though there are numerous exceptions in the case, these especially considered are the only ones regarded as at all formidable. Several of them, urged with hope of success, have been disposed of adversely to the defendant by the decision in the People v. O'Neill in this court (5 *N. Y. Crim. Rep.* 302), and which has recently been affirmed in the court of appeals (109 *N. Y.* 251; 6 *N. Y. Crim. Rep.* 48). Indeed it may be said that all the vexed questions, and all questions of real import arising out of prosecutions, kindred to this, more particularly those relating to corroboration on and the value and admissibility of the evidence of accomplices and perjurers, have been substantially disposed of by the case mentioned, and that of the People v. Jaehne (103 *N. Y.* 182; 4 *N. Y. Crim. Rep.* 478); and the People v. Sharp (107 *N. Y.* 427; 5 *N. Y. Crim. Rep.* 569; same case in this court, 45 *Hun*, 460; 5 *N. Y. Crim. Rep.* 388), and remove all doubt on these subjects.

It must also be borne in mind that under the provisions of the Code of Criminal Procedure, section 542, after hearing an appeal the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties. Now an error not of substance, and which gives rise only to technical, and, therefore, harmless objections, must be disregarded. The effect of the section is to dissipate rules of review which formerly prevailed, and which sometimes led to new trials, even when the error was technical. These are no longer useful. The merit of exceptions in the spirit of the Code must be proclaimed and adhered to (People v. Sharp, *supra ;* and they are available only where they affect the substantial rights of the party (People v. Dimick, 107 *N. Y.* 13, 34, 35).

The examination of this appeal has not revealed the presence of such exceptions or disclosed any ground requiring us to grant a new trial in view of the rules established by the provisions of the Code, *supra,* and the cases cited.

The judgment appealed from must, therefore, be affirmed. Ordered accordingly.

Van Brunt, P. J., and Daniels J., concur.

*John R. Fellows,* district attorney (*McKenzie Semple,* assistant), for the people.

I. The trial court did not err in excluding jurors. But even if the court did err therein, the ruling is one to which exception does not lie. All that a defendant has a right to ask is a jury composed of competent, fair and impartial citizens; and this constitutional right is not impaired by the exclusion of jurors, though ever so impartial, as long as impartial jurors remain to try the case. *Thompson & Merriam on Juries,* 228, 229; Grisson v. State, 2 *Tex. App.* 376, 378. The ruling of the court in allowing or disallowing a challenge to a juror who did not participate in the verdict is not reviewable upon appeal. Section 517, Code Crim. Proc. provides that an appeal may be taken

from the judgment of conviction, and upon the appeal any decision of the court in an intermediate order or proceeding forming a part of the judgment roll as prescribed by section 485 may be reviewed. Section 485 provides that the judgment roll shall contain, amongst other things, a copy of the minutes of a challenge to a juror participating in the verdict, and shall also contain a bill of exceptions. Section 455 provides that exception, may be taken by defendant to a decision of the court upon a matter of law by which his substantial rights are prejudiced, and not otherwise, in any of the following cases: In admitting or rejecting testimony on the trial of a challenge for actual bias to any juror who participated in the verdict; or in allowing or disallowing such challenge.

It is clear as above argued that an exception cannot be taken to a challenge affecting a juror who did not participate in the verdict. If such an exception cannot be taken and reserved at all, it cannot properly be incorporated in the bill of exceptions, the only office of which is to incorporate in the record an account of the proceedings to which exceptions have properly been taken. If such an exception cannot therefore be included in the bill of exceptions, it cannot be included in the judgment roll; and if not included in the judgment roll, it cannot be reviewed on appeal; for on appeal to rulings can be considered or reviewed, save such as are properly included in the judgment roll.

II. The court did not err in overruling any of the defendant's several challenges to the several jurors who participated in the verdict. Henry Ottenburg.—The effect of this juror's answers upon the challenge is that he had formed and still entertained an opinion upon the guilt or innocence of the defendant, and that this opinion would remain until removed by the evidence; that whether it was or was not removed by the evidence the opinion would not influence his verdict, and that he could and would render a fair and impartial verdict upon the evidence alone, without

being influenced by his opinion. The juror was competent. People v. Buddensieck, 103 N. Y. 487; 5 N. Y. Crim. Rep. 69; People v. Carpenter, 102 N. Y. 238; 4 N. Y. Crim. Rep. 177.—John G. Ross.—This juror also swore that he had an opinion which it would take evidence to remove, but that his verdict would not be influenced by the opinion, whether removed or not. He was therefore a competent juror within the principle of the foregoing cases. George K. Davis.—The evidence upon the challenge to this juror was to precisely the same effect as the evidence upon the challenge of Ross and upon the challenge of Ottenburg. There was, therefore, upon the principle of the foregoing cases, a competent, fair and impartial juror within the meaning of the Code.

III. Even if the court did err in overruling any of the defendant's challenges or in admitting or excluding evidence upon the trial of any of the challenges to any of the jurors who participated in the verdict, such error, if any, is not available, inasmuch as the defendant did not exhaust his peremptory challenges and had four remaining when the jury was sworn. People v. Carpenter, supra.

IV. The right of peremptory challenge was not waived by the failure of the district attorney to challenge peremptorily in the first instance; and the court did not err in allowing the district attorney to challenge the jurors in question at the time and in the manner stated by the defendant in his fourth point.

The right of peremptory challenge is not to be deemed waived, but can, in the discretion of the trial court, be exercised by either party at any time before the juror is sworn. People v. Carpenter, supra. When the jurors in question were peremptorily challenged by the district attorney they had not been sworn as jurors. The right of peremptory challenge as to them had not then been waived by the district attorney; he was still entitled to exercise it, and the court did not err in allowing him to exercise it. Nor did the court err in failing and refusing to require the

jurors to be sworn as soon as accepted.    People *v.* Carpenter, *supra*.

V. This precise question as to the order of peremptory challenges has been passed upon by the Supreme Court of Iowa, construing a law which is a counterpart of section 385 of the Code of Criminal Procedure.    The Supreme Court of Iowa in that case held that all that such a law could possibly mean is, that the box being full, the prosecution must challenge first, and that it could not mean that the defendant should be permitted to reserve all his challenges until the States has exhausted all allowed to it; and that such a construction finds no warrant either in the letter or spirit of the law, and has neither reason nor fairness to recommend it.    State of Iowa *v.* Pierce, 8 *Iowa*, 231.

VI. The ruling of the court in admitting evidence as to the absence from the jurisdiction of Keenan, Maloney, Dempsey, De Lacey and Sayles, does not constitute such error as would justify a reversal.

Counsel for the defendant in one instance objected to the admission of the evidence in question upon the gronnd " that any evidence attempting to show that any of the persons named have departed from the jurisdiction of the court, is hearsay and incompetent evidence against the defendant, and in no wise binding upon him."

The court ruled that evidence tending to show the departure and flight of Sayles,—such as evidence of the forfeiture of his bond to appear for trial upon the indictment against him, — was incompetent as against the defendant; that while the court would allow, and had allowed, proof of Sayles' *absence* from the jurisdiction, it would not allow evidence of Sayles' *flight from the jurisdiction and justice* of the State.

Thus it was made manifest that the purpose for which the court had admitted the evidence as to the absence from the jurisdiction of Keenan, Maloney, Dampsey and De Lacey, as well as the purpose for which it had admitted the evidence as to the absence from the jurisdiction of Sayles

himself, was to show the absence of material and competent witnessess whom the prosecution might, and should, call if within the jurisdiction.

And that this was the purpose for which the evidence was admitted, is made still clearer by the subsequent ruling of the court when the district attorney in his address to the jury attempted to use the evidence in question for another purpose, viz: as evidence of flight, and thus as evidence corroborative of the story of the accomplices. As soon as such an attempt was made the court struck out the evidence in question altogether, so that it could no longer be regarded at all, or for any purpose.

The ruling of Mr. Justice BARRETT, in admitting this sort of evidence upon the trial of Sharp, was criticised and censured by this court, but, which at the same time held that : " Under the circumstances of the case, the ruling of the court in this instance may not have been of much importance, and upon it alone we should not grant a new trial." People *v.* Sharp, 107 *N. Y.* 427 ; 5 *N. Y. Crim. Rep.* 569.

But in order to bring the rulings of the recorder in this case within the protection of the decision in the Sharp case, it is not needful to contend that the evidence in question was evidence of absence merely, and not evidence of flight. For in the Sharp case this court held that the evidence there in question was in effect, as claimed by the defendant, not evidence of *absence* merely, but of *flight* from the jurisdiction and justice of the State ; and it was to this evidence, which it regarded and deemed for all the purposes of the case as evidence of flight, that this court referred when it held that the admission thereof would not constitute such error as would justify a reversal.

So that even if the evidence in question admitted by the learned recorder in this case be deemed and considered evidence of flight, the ruling of the court in admitting it and submitting it for the consideration of the jury would not constitute such error as would justify a reversal.

But even if the trial court did, in the admission of this evidence, commit an error that if not cured would justify a reversal of the judgment and conviction, yet the error was cured by the subsequent action of the court in striking out the evidence when the district attorney in his address to the jury attempted to use it for what the court considered an improper purpose, viz: as evidence of flight. Having then and there stricken it out, the court covered fully the prayer of the defendant's request, and did not err in refusing to repeat the ruling it had already made in striking out the evidence.

VII. The court did not err in admitting evidence of the conversation between Fullgraff and De Lacey just before Fullgraff took the stand as a witness before the Senate committee.

This point was involved in People v. O'Neill, 109 N. Y. 251; 6 N. Y. Crim. Rep. 48.

R. S. Newcombe and Benj. F. Tracy, for defendant, appellant.

ANDREWS, J.—This is one of the series of cases arising on indictments for bribery in connection with the grant of the Broadway Surface Railroad franchise by the Common Council of the City of New York in 1884. The defendant was a member of the Board of Aldermen and voted for the granting of the franchise. He has been twice tried on the indictment. On the first trial the jury disagreed, and on the second trial, in November, 1886, he was convicted. The conviction was affirmed on appeal to the General Term of the Supreme Court, and this appeal is from the judgment of affirmance. Exceptions were taken by the defendant on the trial to certain rulings in the proceedings in impaneling the jury, to the admission and rejection of evidence, and to the charge to the jury, and to refusals to charge.

The assignments of error are to be considered and de-

cided, in view of section 542 of the Code of Criminal Procedure, which requires the appellate court, on an appeal in a criminal case, to "give judgment without regard to technical errors or defects which do not affect the substantial rights of the parties."

The questions in respect to the impaneling of the jury will first be considered. Each juror drawn, as he was called, was examined first by the prosecution and then by the defense as to his qualifications as a juror, no formal challenge being interposed by either party, and, unless set aside by the court for bias or other cause, took his seat in the box, but without being then sworn as a juror in the case. Neither party exercised the right of peremptory challenge until after the box was full. The people then challenged peremptorily six of the twelve jurors in the box, and others were selected to take their places, and the district attorney then declared himself content with the jury. The counsel for the defense thereupon, before the defendant had exercised the right of peremptory challenge at all, claimed and insisted that the prosecution was bound, if it desired to challenge peremptorily any of the jurors then in the box, to exercise the right at that time and before the defendant exercised his right. The court refused at that time to rule upon the point, and the defendant excepted. The defendant then challenged peremptorily some of the jurors in the box, and their places were filled as before. Subsequently, the prosecution, against the objection and exception of the defendant, was permitted to challenge peremptorily jurors who were in the box when the district attorney first declared himself content, and among the jurors so peremptorily challenged by the prosecution were jurors who were in the box when the district attorney first exercised the right of peremptory challenge, and who were not among the six excluded upon his peremptory challenge in the first instance. Afterward the district attorney was permitted, in repeated instances, against the remonstrance and exception of the defendant, to resume the right of peremptory

challenge after peremptory challenges had been interposed by the defendant, and to challenge peremptorily jurors who were in the box when the defendant commenced to challenge, not excluded on his challenge, and as to whom the district attorney had before declared himself content. The court several times overruled the point raised by the defendant, that the people were bound to exercise the right of peremptory challenge first. The court on one occasion said: " I have already passed upon that subject. I did hold, probably not in this case, nor in this trial, but I did on a former trial, that either side had a right to interpose a peremptory challenge up to the very moment the jury were sworn. I shall adhere to that ruling and give you the benefit of an exception."

The ruling was plainly erroneous. The subject is regulated by statute. Section 385 of the Code of Criminal Procedure, as amended in 1882, declares that " challenges to an individual juror must be first taken by the people and then by the defendant." The next section prescribes the order in which challenges shall be taken : first, challenges for cause, and next, peremptory challenges. The language of section 385 precludes argument.

The learned judge, in overruling the defendant's contention, acted doubtless under a misapprehension of the statutory rule. The only answer to the exception of the defendant on this point, if there is any, is to be found in section 542 before quoted. If the error did not affect a substantial right of the defendant it must be disregarded. The error of the court in disregarding the statutory rule affected, we think, a substantial right of the defendant. The statute prescribing the order in which peremptory challenges should be made was not a mere rule of procedure for the orderly, conduct of criminal trials. It was a right secured to the defendant. It had, at least, the semblance of benefit to the accused. The statute is peremptory, and violation of its provisions was a substantial and not a mere technical error.

Three persons who served on the jury, viz : Henry Ot-

tenburg, George K. Davis, and John J. Ross, were each examined preliminarily on oath as to their qualifications as jurors, and were declared competent by the court. The defendant excepted to the ruling, and it is insisted that these jurors should have been excluded from the jury, on the ground of their having formed and expressed an opinion touching the guilt or innocence of the defendant, and were, therefore, not impartial.

The general term, in its opinion, in considering the exception taken to the ruling of the court in respect to these jurors, declared that the jurors Ottenburg and Davis, upon their own statements, were clearly incompetent to sit as jurors under the decision in the case of People *v.* Greenfield (74 *N. Y.* 277), and "should have been rejected." But the opinion goes on to state that the error "is not fatal, for the reason that the defendant had, when the jury were about to be sworn, four peremptory challenges, and he could have protected himself by the use of these from the apprehended injustice of the acceptance of the objectionable jurors."

Before proceeding to the particular consideration of the exceptions, the overruling of the exceptions to these jurors, and to avoid misconstruction of our conclusion, it is proper to consider what power is vested in an appellate court by the present Code of Criminal Procedure in reversing the decision of a trial court, overruling a challenge for actual bias. Section 376, subdivision 2, of the Code, defines actual bias to consist in the existence of such a state of mind on the part of a juror which satisfies the court, in the exercise of a sound discretion, that such juror cannot try the issue impartially and without prejudice to the substantial rights of the party challenging. It is substantially what was formerly known as a challenge to the polls for favor, the question being as to the indifferency of the juror, as matter of fact, as distinguished from a challenge for principal cause, where the law, upon the challenge being found to be true, adjudged the juror disqualified. It is well

settled under the former practice prior to the act, chapter
427 of the Laws of 1873, that on the trial of a challenge to
the polls for favor the decision of the triers or the court
(where the court was substituted as the triers) on the ques-
tion of indifferency was final and not reviewable (People *v.*
Bodine, 1 *Den.* 308; People *v.* Sanchez, 22 *N. Y.* 147).
But the act of 1873, which made all challenges triable by
the court only, provided for a review on writ of error or
*certiorari* of any decision of the court on the trial of a
challenge.   It was subsequently held in People *v.* Thomas
(67 *N. Y.* 218), in construing the act of 1873, that it
extended the power of the appellate court in respect to
the review of the decision of the court on challenges for
favor, and conferred jurisdiction on writ of error or *certio-
rari*, to review the decision of the trial court on the facts
as well as on the law.   This decision was followed in People
*v.* Greenfield (*supra*), and the court in that case reversed
the conviction, on the ground that the trial judge erred in
in his judgment on the facts overruling challenges for favor
interposed to two of the jurymen who sat in the case.

These decisions would be authoritative as to our right in
the present case, to review the determination of the trial
judge on the merits of the case of the jurors Ottenburg,
Davis, and Ross, if the statute of 1873 is still in force, and
to reverse the conviction if we reach the conclusion that the
decision of the trial judge, that the jurors were free from
actual bias, although not erroneous as matter of law, was
nevertheless erroneous in fact, and that in a wise dis-
cretion, and in justice to the defendant, these jurors ought
to have been set aside.   But section 455 of the Code of
Criminal Procedure explicitly confines exceptions which
may be taken by a defendant on the trial of indictments to
exceptions made to the decision of the court on matter of
law, "and not otherwise," in the following cases : 1. In dis-
allowing a challenge to the panel of the jury.   2. In ad-
mitting or rejecting testimony on the trial of a challenge
for actual bias to any juror who participated, or in allowing

or disallowing such challenge.   3. In admitting or reject-
ing witnesses or testimony, or in deciding any question of
law, not a matter of discretion, or in charging the jury.   It
will be observed that by this section an exception lies to the
improper admission or exclusion of evidence on the trial of
a challenge to a juror who participated in the verdict, or
where, as matter of law, the court erred in allowing or dis-
allowing a challenge.   We are of the opinion, however, that
the order in which peremptory challenges are taken is a
matter of substance, and that section 385, so far at least as
it requires the people to first exercise the right of peremp-
tory challenge, is imperative and not directory.   The right
of peremptory challenge given to an accused person is a
substantial right.   Blackstone says: " It is full of tender-
ness and humanity to prisoners, for which the English laws
are justly famous " (2 *Black. Com.* 352).

By the ancient common law it seems that the crown has
the right of peremptory challenge, but this was changed by
statute 33 Ed. I. St. 4, which took away the right, and re-
quired the king to assign cause of challenge in all cases.
This statute was evaded to some extent by the construction
of the courts, which permitted the prosecution to set aside
a juror for the time being without assigning cause until
after the whole panel was gone through with, and it ap-
peared that a full jury could not be obtained without the
juror challenged (2 Haw. ch. 43, § 3; *Bish. Crim. Proc.* §
937, *et seq.*).   In this case a limited right of peremptory
challenge was given to the people on trials of indictments
for murder and other felonies by chapter 332 of the Laws.
of 1858, five on trials of indictments for murder and fel-
onies punishable with imprisonment for more than ten
years, and in other cases three.   But the defendant was
allowed twenty peremptory challenges in case of an indict-
ment for murder or felonies punishable with ten years or
more imprisonment (2 *Rev. Stat.* 734, § 97).   By chapter
427 of the Laws of 1873 it was provided that, on the trials
of all felonies or misdemeanors, the prosecution should be;

entitled to the same number of peremptory challenges as are given to the defendant. It will be observed that, from the earliest times, the right of peremptory challenge was the especial privilege of the accused. The statute of Edward I. was enacted, as Lord COKE said (*Coke Lyt.* 1566), to put an end to the practice of permitting the king to challenge peremptorily, because it was found to be mischievous on the subject, tending to infinite delays and dangers. When first permitted in this State, the right was greatly restricted, and, until the act of 1875, a much larger number of peremptory challenges was given to an accused person than to the prosecution. The act of 1875 did not prescribe in what order the right of peremptory challenge should be exercised. This was first prescribed by section 385 of the Code of Criminal Procedure, and the requirement of that section that the people shall challenge first is the only substantial advantage remaining to a defendant. The requirement of section 542 of the Code of Criminal Procedure is to be reasonably and fairly applied. The court is no longer required to reverse a conviction because a mere technical error is disclosed by the record. If error is found, it may be disregarded if it appears that no substantial right of the defendant was prejudiced. But it is plain that every statutory provision intended for the benefit of the accused confers a substantial right, which cannot be disregarded without his consent.

In civil cases, where property is sought to be taken or title divested under statutory proceedings, it is the familiar and settled doctrine that the statute must be strictly followed, and every provision having the least semblance of benefit to the owner must be complied with, or else the proceeding is void. The same principle applies with even greater force where the proceeding may affect life or liberty. It is plain, we think, that the statute prescribing the order of peremptory challenge in criminal cases, that the right should be first exercised by the people, was intended for the benefit of the defendant. The prosecution being first

required to exhaust its peremptory challenges relieves the defendant from using his challenges in cases where the juror challenged by the prosecution was also unacceptable to the defendant, and thereby preserves his challenges to be used in other cases. There is a choice, moreover, as between qualified jurors. Both the prosecution and the defense may reject a qualified juror without assigning cause. The right of peremptory challenge was originally given to the accused that he might exclude from the jury a juror against whom he entertained a prejudice, although not founded upon any reason which would disqualify him. So, also, where he has a preference in favor of a juror legally selected and qualified to sit, who is not peremptorily challenged by the prosecution in the first instance, the observance of the statute secures to the accused his presence on the jury. On the other hand, if the prosecution is permitted to reserve its peremptory challenge after the right has been exercised by the defendant, he is enabled to acquire information as to what jurors are satisfactory to the defendant, and to exclude them from the panel for that reason. This is an advantage to which, under the statute, he is not entitled. If the practice pursued in this case can be maintained we see no reason why the prosecutor might not, in the first instance, have refused to challenge at all, reserving his right to challenge peremptorily until after the defendant had challenged. The statute would be nullified in that case no more than by the course actually pursued.

But no right is given to except to the decision of a judge on the facts, and we find no provision in the Code for a review of decisions on the trial other than those to which an exception lies. It seems, therefore, that the Code has restored the law as it originally stood, and that the decision of the trial judge on the question of indifferency is not reviewable, except in the absence of any evidence to support it, in which case it is an error of law to which an exception lies.

The question raised on the exceptions to the decisions of

the court in overruling the challenges to the jurors Otten-
burg, Davis, and Ross, turns, therefore, upon the point
whether the evidence discloses a condition of mind on their
part which, as a matter of law, rendered them incompetent
jurors for actual bias. We fully concur with the opinion
of the General Term that those persons ought not to have
been permitted to sit as jurors, and we are further of opin-
ion that some of them, at least, were legally incompetent
by reason of actual bias, disclosed on the face of their own
testimony. The juror Ottenburg said that he had read and
talked of the case, and had formed an opinion touching the
guilt or innocence of the defendant prior to his first trial;
that he had read much of the evidence on that trial, and that
his opinion remained the same; that it amounted to a con-
viction; that what he had read of the proceedings of the
Board of Aldermen in respect to granting the franchise to
the Broadway Surface Railroad had created a strong and
decided prejudice against those members who voted for it;
being asked: "And that prejudice would go with you in
the jury box, would it not?" answered: "If I am sworn I
would take it with me in the jury box, and it would remain
with me until the evidence in the case was sufficient, in my
opinion, to remove that prejudice, and whether it would be
sufficient or not I cannot tell until I hear it; and whether
the prejudice I now have would influence my verdict would
depend on the strength of the evidence that would be intro-
duced in the case; if the evidence was very strong and very
convincing, it would do away with my opinion, and if it
was not, I would have my opinion." The juror, both before
and after giving his evidence, stated in answer to the ques-
tion of the district attorney, following substantially the
language of section 376 of the Code, that he believed that
such impression or opinion would not influence his verdict,
and that he could render an impartial verdict according to
the evidence. But, at the very conclusion of his examina-
tion, he stated, in response to an inquiry of the defendant's
counsel, that, substituting the word "opinion" for the word

" prejudice," he intended to stand by the answers previously given to the questions of the defendant's counsel.

The juror Davis stated, on his examination by the defendant's counsel, that he had both formed and expressed an opinion in the case—a decided opinion.

Q.—" And would it remain with you and influence your action as a juror until there had been evidence sufficient introduced to remove or change it ?"

A.—" Well, I don't know how I would answer that; if the testimony was given as before, I think my opinion would be the same."

Q.—" Then I infer that you have read something of all the evidence given on the former trial ?"

A.—" Very carefully."

Q.—" The whole of it ?"

A.—" Yes, sir ; substantially so."

Q.—" And upon that you formed your opinion ?"

A.—" I did."

Q.—" And if the evidence proved to be correctly reported, proved to have been correctly reported, then your opinion as a juror will be the opinion you now entertain ?"

A.—"If the sworn testimony is given, yes, sir ; and, unless there was testimony introduced on one side or the other on this trial sufficient to change the opinion that I formed from the testimony taken on the other trial, I would render my verdict according to my present opinion."

Q.—" And would that opinion influence you in the reception of the evidence as it came from the witness stand, that is to say, as a witness appeared on the stand to-day on this trial, and you, notwithstanding what you had read of his evidence before, would you be predetermined one way or the other to credit or discredit that witness's testimony by your present opinion ?"

A.—" I think not."

Q.—" You think not ?"

A.—" I think perhaps the evidence might appear differ-

ent to me when I heard it directly given than when I read it."

Q.—" You think your present opinion would not affect the weight or influence that you might give to the evidence in this case, as it was delivered from the witness stand ?"

A.—" I think I would not. I might be unconsciously influenced; I do not know. I think it would not influence."

Q.—" Do you suppose that the evidence, as delivered by the witnesses on this trial, should leave your mind somewhat in doubt as to the verdict at which you should arrive, would your present opinion influence you any in that event one way or the other ?"

A.—" I do not know how to answer that question; if it left my mind in doubt, I should not want to vote either way."

Q.—" Well, suppose you should find yourself in that position on this trial, should your present opinion influence or guide your action at all ?"

A. " It might."

Q. " Do you believe it would in that event ?"

A. " Well, I really could not say what effect it would have."

Q. " Are you in doubt as to what effect it would have ?"

A. " I am, and am not able to say what effect it would have in that event."

The juror further stated : " I have discussed it (the case) with a great many people, but not always expressed an opinion, but I have expressed an opinion several times."

Q. " How many different times and on how many different occasions should you say you had given expression to your opinion ?"

A. " Well, half a dozen times."

Q. " And to half a dozen persons ?"

A. " Well, there may have been, sometimes, several people present when the opinion was expressed. I have entered into a discussion on the subject with people when sometimes different sides were maintained, one maintaining

one side and the other the other; and it has been a subject of discussion between us, and as a result of that discussion opinions have been expressed."

The juror Ross had read more or less of the testimony on the former trial, had formed an opinion which he then entertained, and his condition of mind in respect to the case was very similar to that disclosed by the jurors Ottenburg and Davis.

It is very clear that, prior to the act of 1872, these jurors would have been excluded on a challenge for principal cause. So, also, under the act of 1873, according to the case of People v. Greenfield (supra), this court would have reversed the conviction for the error of the trial court in its finding on the fact in respect to actual bias. There has been no change in the fundamental rule that an accused person is entitled to be tried by a fair and impartial jury. Formerly the fact that a juror had formed and expressed an opinion touching the guilt or innocence of a person accused of crime was in law a disqualification, and, although he expressed an opinion that he could hear and decide the case upon the evidence produced, that did not render him competent. The statute of 1872 changed the pre-existing rule by enacting, in substance, that an existing opinion or inference as to the guilt or innocence of an accused person should not be a sufficient ground of challenge to a juror if he could declare on oath his belief that such opinion or inference would not influence his verdict, and that he could render an impartial verdict, according to the evidence, and the court should be satisfied that the juror did not entertain such a present opinion or impression as would influence his verdict. The substance of this provision in the act of 1872 is incorporated in section 376 of the Code of Criminal Procedure. Now, as formerly, an existing opinion by a person called as a juror of the guilt or innocence of a person charged with crime is *prima facie* a disqualification, but it is not now, as before, a conclusive objection, provided the juror makes the declara-

tion specified, and the court, as judge of the fact, is satisfied that such opinion will not influence his action. But the declaration must be unequivocal. It does not satisfy the requirement of the statute if the declaration is qualified or conditional. It is not enough to be able to point to detatched language which alone considered would seem to meet the requirement, if, on construing the whole declaration together, it is apparent that the juror is not able to express an absolute belief that his opinion will not influence his verdict.

It cannot, we think, be justly claimed that the jurors Ottenburg and Davis, in view of their testimony as a whole, made the declaration required by the statute. They had an opinion in the case which was a conviction. It was founded upon the most authentic knowledge of the criminal facts, viz.: the testimony on the former trial, which was reproduced on the trial in which they participated. Fairly construed, their declaration of their belief that they could render an impartial verdict was qualified by a doubt, and was not sure and absolute. The defendant was at least entitled to a certain and unequivocal declaration of their belief that they could decide the case uninfluenced by their previous opinions; and this, their evidence, taken as a whole, did not contain, and as a matter of law they should have been set aside. The answer of the General Term to this assignment of error, that when the jury was sworn the defendant had four peremptory challenges unused, which he might have employed in excluding the three jurors in question, was not sufficient. The precise question was considered and determined by the old Supreme Court in People v. Bodine (supra), and again in Freeman v. People (4 Den. 31), both notable cases in this State. In People v. Bodine, the prisoner had challenged but thirteen jurors, although she might have challenged twenty. It was argued that, as she might have excluded all those who were challenged for favor and improperly allowed to

sit on the jury, she was precluded from availing herself of the exception.

But in answer to this claim BEARDSLEY, J., in pronouncing the opinion of the court reversing the conviction, said : "Every person on trial is entitled to a fair and impartial jury, and, to secure this object, challenges for cause are allowed and are unlimited. If adequate cause be shown, the juror in every instance should be set aside. This is the right of the party challenging, and is in no case to be granted as a favor. Such is plainly the law where peremptory challenges do not exist, and where they do, the rule is the same—those who challenge peremptorily may challenge for cause. Nor is this an idle ceremony which the judge may, in any case, overlook or disregard. He is bound *ex debito justitiæ* to receive the challenge and dispose of it as the law requires. He certainly would not be allowed to disregard a challenge for cause and turn the party making it over to his peremptory challenges; nor, in my opinion can the fact that the party still has peremptory challenges at his command deprive him of any redress which the law would otherwise give for a violation of his right. . . . In no case is the prisoner bound to resort to his right to make peremptory challenges. It is armor which he may wear or decline at his pleasure. It is for his own exclusive decision and consideration, and the court has no right to interfere with his determination. Nor should the prisoner's refusal to make use of her peremptory challenges, as she might have done, preclude her from raising objections to what was done by the judge ; and if, in truth, errors were committed, I do not see that it is less our duty to correct them than it would have been if the prisoner had fully exhausted her peremptory challenges."

This doctrine, so fully and carefully enunciated in this case, was reaffirmed in Freeman *v.* People. The decision in People *v.* Bodine, made in 1845, has been regarded as the settled law of this State upon this question from that time, and the casual observations of the court in People *v.* Casey

(96 *N. Y.* 115; 2 *N. Y. Crim. Rep.* 194), and People *v.* Carpenter (102 *N. Y.* 238; 4 *N. Y. Crim. Rep.* 177), where the point was not a material one, were not intended to disturb or overrule the doctrine settled by the prior case.

The defendant, by the use of three of his remaining challenges, might have excluded the three jurors from the box. This would have left him but one peremptory challenge to use in filling their places. He could not know that jurors less acceptable would be selected, nor that the district attorney might not then use his remaining peremptory challenges, as he had done before, in rejecting jurors in the jury box with whom both parties had declared themselves content. The defendant was not compelled to place himself in this dilemma, but was entitled to rely upon his exception to the overruling of his challenges for bias.

Exceptions were taken to other rulings on the impaneling of the jury, only one of which will be noticed.

One Platt was called as a juror, and the district attorney proceeded to examine him as to his qualifications. He was asked if he knew any of the lawyers engaged in the case, and he answered that he knew Mr. Newcombe, one of counsel for the defendants. The record then proceeds as follows :

" Q.—' Had you any business with him ?'

" A.—' Very little.'

" Q.—' Has he been counsel for you, Mr. Platt ?'

" A.—' He has not in any case; just for advice.'

" *Mr. Martine.*—' I submit the challenge.'

" THE COURT.—' I think he had better be excused. He says he has advised with Mr. Newcombe. You (Mr. N.) have so many clients you cannot recollect them all.'

" *The witness.*—' Well, it is a kind of roundabout matter.'

" *Mr. Newcombe.*—' I don't know that I was ever counsel for Mr. Platt.'

" THE COURT.—' He says you gave him advice.'

" *The witness.*—' Not in any business way ; only I was called there.'

" THE COURT.—' I think your acquaintance with Mr. Newcombe will disqualify you from serving in this case.' Exception by defendant."

The juror was excluded because he was acquainted with one of the counsel for the defendant, and had advised with him on some occasion not connected with the case on trial. We know of no such cause of challenge. The Code defines certain relations between a juror and a party as ground of challenge for implied bias, among which is the relation of client and attorney, and confines the causes of challenge for implied bias to the enumerated cases, and the cause for which this juror was excused is not among them, (*Code*- § 377). The Code also defines actual bias as the existence of a state of mind on the part of the juror in reference to the case or to either party, as satisfies the court that the juror cannot try the case impartially and without prejudice to the substantial rights of the party · challenging (§ 376), and declares that a challenge for actual bias cannot be taken for any other cause (§ 378). We have found no precedent for excluding a juror upon the ground assigned by the court, and in reason it seems quite insufficient, nor is it warranted by the statute.

But it is insisted, on behalf of the people, that, even if thé trial court erred in excluding this juror, as he did not sit, the ruling is one to which an exception did. not lie. This contention is founded on a misconstruction of the second subdivision of section 455 of the Code of Criminal Procedure, which permits an exception to be taken in " admitting or rejecting testimony on the trial of a challenge for actual bias, to any juror who participated in the verdict, or in allowing or disallowing such challenge." This subdivision is construed by the counsel for the people as if the words " who participated in the verdict " followed instead of preceded the last clause, thereby limiting the right of exception in all cases to rulings as to jurors who

participated in the verdict. This construction is manifestly erroneous. The last clause permits an exception as well when the challenge is allowed as when it is disallowed, or, in other words, when the challenge is sustained, as when it is overruled. If the challenge is sustained, the juror is necessarily excluded and does not participate in the verdict, but an exception is expressly given in that case as in the other.

Construing both clauses in the subdivision together, it does not permit an exception to a ruling in admitting or rejecting testimony on the trial of a challenge, except when the challenge is overruled and the juror participates in the verdict, but does permit an exception to an erroneous rejection of a juror on the facts appearing in the case. In other words, if the juror, on the facts proved, was a competent and legal juror, an exception lies on his rejection.

It is further insisted that, admitting that an exception lies, it is not reviewable on appeal, for the reason that section 517,—authorizing an appeal from judgment of conviction,—provides that, upon the appeal, "any decision of the court in an intermediate order or proceeding forming part of the judgment roll as prescribed in section 485, may be reviewed," and that, by section 485, it is provided that the judgment roll shall contain, among other things, "a copy of the minutes of a challenge to a juror participating in the verdict."

The argument is that, as only the proceedings on a challenge to a juror participating in the verdict are required to be incorporated with the judgment roll, the intention of the statute was to confine the review to such cases only. But section 485 also provides that the judgment roll shall contain the "bill of exceptions, if there be one," and all exceptions may be incorporated in the bill of exceptions (section 456).

Under the former practice the proceedings on challenges for principal cause were entered in the record, but it was otherwise as to the proceedings or challenges to the polls

for favor, although questions of law arising on such challenges could be reviewed on bill of exceptions (BEARDSLEY, J., in People *v.* Bodine, 1 *Den., supra*).    Under section 485 of the Code, proceedings on challenges to jurors who participated in the verdict must be incorporated in the judgment roll, and decisions thereon may be reviewed on exceptions, as of course, but, if the defendant desires a review of his exceptions where the challenges were sustained, he must incorporate them in a bill of exceptions, to be settled and annexed to the roll.    The legal right of a defendant may be violated as well by excluding competent jurors as by admitting incompetent ones.    He is entitled in all cases to a fair and impartial jury, but he is also entitled to insist that the jury shall be selected according to methods established with a view to secure a just and impartial administration of the jury system.    The law provides for the exclusion of incompetent jurors from the panel, and also of a limited number by peremptory challenge.    There must be either legal cause or a peremptory challenge to justify setting aside a juror properly drawn.    The court cannot arbitrarily and without cause set aside a competent juror.    Neither the court nor the parties can select the jury except in the way pointed out by the statute.

The intentional omission of the sheriff to summon one or more of the jurors drawn to serve at a court is, by the Code, made a ground of challenge to the whole panel (§ 362).    This section recognizes the principle that the legal right of a defendant, in the selection of a jury, may be violated, although he may not be able to show that any of the jurors by whom he was tried were not fair or impartial. This court had occasion to consider this general subject in Hildredth *v.* City of Troy (101 *N. Y.* 234), and we adhere to the views then expressed.    But, while we are of the opinion that the court, in excluding the juror Platt, committed a legal error, it is not necessary to decide that this error alone would require a reversal of the conviction.    It may be that the erroneous exclusion of a single juror from

the panel by mistake or inadvertence, where it could be fairly inferred that no injury resulted to the defendant, might be disregarded under section 542 of the Criminal Code. We do not pass upon this question. But we have deemed it proper to call attention to the ruling in the case of this juror, and to express our opinion as to the legal validity of the exception, so that the important principle that jurors legally drawn can only be excluded by the court for legal cause may not be lost sight of.

We think errors were committed in the admission of evidence.

I. The prosecution was permitted, against the objection and exception of the defendant, to prove by the clerk of the court that Alderman Sayles, a member of the board of aldermen, and one of the thirteen who constituted the alleged "combine," had been indicted for bribery and had not been brought to trial, and also that Keenan, Dempsey, De Lacey and Moloney, persons also implicated in the bribery, were, at the time of the trial and for some time previous thereto, absent from the jurisdiction of the court, and were residing in Canada. The proof of the latter fact preceded in order of time the proof as to the indictment against Alderman Sayles, and was objected to specifically on the ground that the fact that the persons mentioned had departed from the jurisdiction of the court was incompetent against the defendant. The district attorney openly avowed, on the examination of the clerk, upon his offer to prove by him the specific reasons why Alderman Sayles had not been brought to trial, that the proof was offered on the same ground that he had offered the proof that had been admitted, of the present residence of Keenan and others, viz.: "As corroborative evidence of the story of Fullgraff and Duffy." It is perfectly plain from the record that the evidence in respect to the indictment of Alderman Sayles and the absence of Keenan and others from the jurisdiction was offered and received for the purpose indicated by the district attorney. It is clearly incompetent for this or any

other purpose. Similar evidence was given on the trial of Sharp (107 *N. Y.* 427; 5 *N. Y. Crim. Rep.* 569), and was held incompetent, although the avowed purpose for which it was then offered and received was to account for the persons named not being called as witnesses for the prosecution. Here it was offered and received upon the vital point of the corroboration of the accomplices. The admission of this evidence was in contravention of the settled rule that only the acts and declarations of a co-conspirator, done in furtherance and execution of the common design, are admissible against a conspirator on trial for the common offense, and that when the conspiracy is at an end, and the purposes of the conspiracy have been fully accomplished, or the conspiracy had been abandoned, no subsequent act or declaration of one of the conspirators is admissible against another (1 *Green. Ev.* § 111; 3 *Id.* § 94; People *v.* Davis, 56 *N. Y.* 95; Guaranty Co. *v.* Gleason, 78 *Id.* 503). It is scarcely necessary to say that, if the evidence was inadmissible on the main issue, it was equally so when offered in corroboration of the witnesses for the people. The error was not cured by what occurred on the summing up of the case to the jury, especially in view of the refusal of the court to charge upon the request of the defendant's counsel "that the jury had no right to consider the fact that certain of the aldermen, alleged to have been in the supposed corrupt combination, are now out of the jurisdiction of the court."

II. The evidence that De Lacey, just before Fullgraff's examination before the Senate committee in 1886, had a consultation with the latter, and said to him: "Well, you don't know anything, and when you get before the committee you tell them you don't know anything," was also erroneously admitted. The fact that the witness Fullgraff consulted with De Lacy, and had an understanding with him as to how he should testify before the Senate committee, could not legally affect the defendant. Yet the evidence tended in the minds of the jury to confirm the

original association and concert testified to by the witness, and to give credit to his story, although wholly incompetent for that purpose. The examination before the Senate committee occurred two years after the conspiracy had been accomplished. Fullgraff, it is true, admitted that he swore falsely before the Senate committee, but the defendant claimed that that testimony was true and his testimony on the trial was false. The people were not entitled to show that his former testimony was given on consultation with De Lacy, one of the "combine," and in pursuance of an arrangement to which the defendant was not a party.

There were many exceptions to the charge and refusals to charge which it is unnecessary to consider, as the errors pointed out require a reversal of the judgment. Some of those exceptions present serious questions, but we are not satisfied that the exceptions not considered are well founded, and we pass them without special examination.

For the reasons stated, the judgment should be reversed and a new trial granted.

EARL, DANFORTH and FINCH, J J., concur.

RUGER, Ch. J., concurs in result.

PECKHAM, J., dissents from that portion of the opinion treating of the order in which peremptory challenges should be made, on the ground that the statute is directory only, and not matter of exception on which to grant a new trial. Also, from that portion of the rejection of a competent juror, as being error upon which an exception might be taken. He agrees upon the other matters expressed in the opinion.

GRAY, J., dissents from the grounds of the conclusion in Judge ANDREWS's opinion, and votes for reversal and a new trial on the ground that it was error to charge the jury that evidence of good character of itself did not tend to prove that a man is not guilty of an offense. This error was not cured by anything in the rest of the charge, and being substantial in its nature, the defendant is entitled to a new trial.

NOTE ON COMPETENCY OF JURORS IN CRIMINAL CASES.

The object of the present note is to give all the recent New York cases, and all the most important of the recent decisions in other States on the competency of jurors.  To give the older and better known cases would be an unnecessary waste of space.

An examination of the statutes of other States on this question will show that the rule is in many of them substantially the same as that expressed in our own statute, there being merely a difference of phraseology.

**Recent New York Cases.**—By the statute of 1872 (re-enacted in section 376 of the Code of Criminal Procedure), in respect to the formation or expression of an opinion by a juror, as to the guilt or innocence of the prisoner, the legislature intended to remove the strict rule theretofore existing, which attached a disqualification to the fact of forming and expressing such opinion. That a juror has formed such an opinion is no longer, in any case, a legal disqualification, provided he makes the declaration specified in the statute. People *v.* Welch, 1 *N. Y. Crim. Rep.* 486.

The question of a juror's competency is to be determined as a fact, and each case must rest upon its own peculiar features. *Id.*

Where the juror has read in a newspaper the evidence taken in a former trial, and formed an opinion therefrom, in a case where the evidence is circumstantial and the testimony is likely to be repeated, the juror should not be permitted to sit. *Id.*

Although a juror has read about a case in a newspaper, yet if he have not a fixed and settled opinion, but merely an impression based upon a certain fact, or condition of facts, if proved to be true, and with such an opinion he would be governed by the evidence and render a verdict accordingly, he may be allowed to sit, if the court, under the circumstances, after seeing and hearing the juror, is of opinion that he is unbiased. *Id.*

Notwithstanding section 376, Code Criminal Procedure, a person who has formed or expressed an opinion or impression in regard to the guilt or innocence of the defendant, is still, as formerly, disqualified to sit as a juror, unless three things shall concur: (1) he must declare an oath that he believes that such opinion or impression will not influence his verdict; (2) he must also declare on oath that he believes he can render an impartial verdict according to the evidence; (3) the court must be satisfied that he does not entertain such a present opinion or impression as would influence his verdict. People *v.* Casey, 2 *N. Y. Crim. Rep.* 194; 96 *N. Y.* 115.

The decision of the trial judge overruling the challenge in such a

case is reviewable in the Court of Appeals, and that court must determine upon the evidence elicited whether or not he was a competent juror. *Id.*

It is not necessary that the above declarations be made literally; it is enough that they be made in substance. *Id.*

The defendant has the right to have the conscience and mind of the juror tested by a declaration under oath, not simply that he will be governed by the evidence, but by declarations which show that he believes he is in such a state of mind so free from fear and prejudice, that he can weigh the evidence impartially, uninfluenced by any impression or opinion he has formed. *Id.*

It is the object of the law, so far as possible, to obtain impartial, fair-minded men for jurors, who can divest themselves of all previous impressions, and try a case submitted to them upon the merits, and decide it according to the evidence. *Id.*

It is no answer to an exception to rulings permitting incompetent jurors to sit, that they were excluded by peremptory challenges, where it appears from the record that before the jury were fully impaneled, defendant was obliged by such erroneous rulings to exhaust all the peremptory challenges allowed him by law. In such case it is clear that defendant is harmed and that his rights are abridged. *Id.*

Upon a trial one called as a juror testified, under challenge, that he had a strong impression, that he could try the case on the evidence, but that his impression would be in his mind and govern him to some extent; that that impression would have to be removed by evidence, and that to that extent it would govern his deliberation; that he had no special doubt that he could render an impartial verdict upon the evidence. The trial judge overruled the challenge. *Held*, error, that the juror was disqualified. People *v.* Tyrrell, 3 *N. Y. Crim. Rep.* 142 (Supm. Ct. Gen. Term).

Section 376 of the Code of Criminal Procedure does not require that a juror to be acceptable should say that he knows that he would not be influenced by his previous or present opinion or impression, but only that he believes he would not be, and that he believes he can render an impartial verdict. People *v.* Willett, 3 *N. Y. Crim. Rep.* 324 (Supm. Ct. Gen. Term).

A juror is competent who declares on oath that, notwithstanding an opinion or impression entertained in reference to the accusation to be investigated, he believes that he can render a verdict without being influenced in any way by the opinion that he has formed. Code Crim. Proc. § 376, subd. 2. People *v.* Crowley, 4 *N. Y. Crim. Rep.* 26 (Supm. Ct. Gen. Term).

Note on Competency of Jurors.

Upon the trial of a challenge for cause it appeared that the juror at the time of the murder had read some notice of the circumstances in one newspaper and more recently in another, but he stated he had no "formed impression about it," or "firm opinion," "such opinion or impression as he had he could lay aside and sit as a juror in this case, and render an impartial verdict according to the evidence." *Held*, that it was for the trial court to determine whether the juror entertained such opinion or impression as would influence his verdict; that it appeared he had no prejudice against the prisoner, and his mind was free to receive the evidence and decide upon it fairly and impartially, and that, therefore, he was qualified to sit. People *v.* Otto, 4 *N. Y. Crim. Rep.* 149 (Supm. Ct. Gen. Term, and Ct. of App.).

Where it appears that the trial court was satisfied that a juror challenged for bias entertained no present opinions which would influence his verdict, and that the examination of the proposed juror justified such determination, the challenge will be held properly overruled. People *v.* Crowley, 4 *N. Y. Crim. Rep.* 168 (Ct. of App.).

A juror is competent who testifies that he has an impression as to the guilt of the prisoner, but that his impression will not influence his verdict; that he can render an impartial verdict according to the evidence; and that he will give the prisoner the benefit of every reasonable doubt, and acquit him if such doubt exists. People *v.* Clark, 4 *N. Y. Crim. Rep.* 572 (Supm. Ct. Gen. Term).

There is no rule of practice which requires the court to postpone the swearing of jurors until the panel is wholly completed, and, the statute being silent as to the time of swearing, such time is within the discretion of the trial judge. But, *semble*, that under the Code of Criminal Procedure (chap. 3), each juror should be sworn as he is called and accepted by the parties. People *v.* Carpenter, 4 *N. Y. Crim. Rep.* 177 (Ct. of App.).

A juror who testifies that from reading the papers he has formed an opinion of the guilt or innocence of the defendant which it would require evidence to remove, but could go into the jury box and decide the case upon the evidence without being influenced by such opinion, is a competent juror. People *v.* Buddensieck, 5 *N. Y. Crim. Rep.* 69 (Ct. of App.).

A juror who is in the employment of a corporation of which the district attorney is president, but has nothing to do with the employment or discharge of its employes, and no personal relations with the juror beyond those of persons living in the same town, is a competent juror. People *v.* Beckwith, 5 *N. Y. Crim. Rep.* 222.

A juror who testifies that he knows of no reason why he cannot render an impartial verdict upon the evidence; that he had read in the newspapers about the occurrence in question, but had formed no opinion of the guilt or innocence of the prisoner; that his mind was free from any impression in regard thereto, but was of the opinion, from what he had read, that the catastrophe was the result of culpable negligence on the part of some one; that it would require evidence to remove the impression, but testified in substance that he nevertheless could go into the jury box and render an impartial verdict upon the evidence without being influenced by the opinion and impression derived from what he had read, is a competent juror. People *v.* Buddensieck, 5 *N. Y. Crim. Rep.* 69 (Ct. of App.).

The existence of a particular state of mind on the part of a juror in reference to the case, or to either party, is a proper subject of inquiry in order to ascertain whether the juror has actual bias or not. People *v.* O'Neill, 5 *N. Y. Crim. Rep.* 302.

The existence of an abstract opinion on the part of a juror that a certain defense,—*e.g.*, insanity,—had been often interposed when it did not, in fact, exist, does not furnish any presumption that such juror has a prejudice or bias against such defense when honestly interposed, and such juror is competent when he testifies substantially that he can render a just verdict upon the evidence in respect to that defense, without prejudice or bias against the defendant interposing it. People *v.* Carpenter, 4 *N. Y. Crim. Rep.* 177 (Ct. of App.).

In a case where the evidence for the prosecution will partly depend upon the evidence of an accomplice, a proposed juror may be asked if he has such a prejudice against accomplices as would prevent his giving that testimony such weight as it might be entitled to in law. People *v.* O'Neill, *infra.*

A belief that certain aldermen acted corruptly does not render a juror incompetent to investigate the question as to who corrupted them. People *v.* Sharp, 5 *N. Y. Crim. Rep.* 155 (Supm. Ct. Spec. Term).

People *v.* Petmecky (Supm. Ct. Gen. Term), 2 *N. Y. Crim. Rep.* 450, and People *v.* Tyrrell (Supm. Ct. Gen. Term), 3 *Id.* 142, are overruled by the case at bar on the point of whether or not the defendant had, when the jury was sworn, exhausted his peremptory challenges, is the test whether his rights have been affected by the action of the court upon challenges.

**Cases in Other States.**—The fact that a juror has contributed money for the prosecution of persons generally who were charged

with keeping liquor nuisances is not ground for challenging him off the jury on the trial of a person charged with keeping a liquor nuisance. State *v.* Hoxsie, 15 *Rhode Island,* 1: 2 *Am. St. Rep.* 838. *Contra,* Commonwealth *v.* Moore, 143 *Mass.* 136.

Opinion which disqualifies a juror in criminal case is of that fixed character which repels the presumption of innocence of the accused, who is already condemned in the juror's mind; and such disqualification does not arise because it will require some evidence to remove impressions or opinions formed from rumors, newspaper statements, or other sources. People *v.* Barker, 60 *Mich.* 277; 1 *Am. St. Rep.* 501.

Sources of information are important in determining the effect likely to have been produced upon the mind of a juror, in a criminal case, and the influence likely to be exerted upon his judgment; but impressions made upon the mind which lead toward certain conclusions, whether reached or not, will always require other impressions to be made to eradicate the former ones, or to lead to different conclusions, or, in other words, will require some evidence to remove them. *Id.*

The question whether a juror in a criminal case is disqualified by an opinion must be always one of degree; and the trier is called upon to determine whether the opinion entertained is of that fixed or permanent character which disqualifies him from coming to the case in a fair and impartial frame of mind, unaffected with prejudice or favor to either party. *Id.*

The accused is not prejudiced by improperly overruling a challenge for cause, where he thereupon peremptorily challenges the juror and accepts a jury without exhausting his peremptory challenges. *Id.* (This is opposed to the rule laid down in the case at bar.)

For a very elaborate discussion of the question of what preconceived opinion is a ground for challenge to jurors, see a note in 36 *Am. Dec.* 521, which gives all the most important cases on the subject. See also the note to People *v.* Barker, above cited, in 1 *Am. St. Rep.* 518, as to the subject of challenges in general, and the very numerous cases there cited.

Outside of New York in many States the rule is contrary to that of the case at bar, and error in determining competency of jurors will not be considered when it does not appear that accused's peremptory challenges were exhausted. State *v.* Simmons, 38 *La. An.* 41; Curran *v.* Percival, 21 *Neb.* 434; Steagald *v.* State, 22 *Tex. App.* 464; Andrews *v.* State, 21 *Fla.* 598; Herbert *v.* Northern Pac. R. Co., 3 *Dak.* 38; Hopt *v.* Utah, 120 *U. S.* 430.

A juror is qualified, although he has formed an opinion which

it will require evidence to remove, if he states that the opinion was formed upon hearsay, which he values little, and that he can render an impartial verdict.　Steagald v. State, 22 *Tex. App.* 464.

Jurors impaneled for the trial of an indictment for murder, who, in their examination upon voir dire, state that they have knowledge of facts said to be connected with the crime, upon which they have formed opinions as to the guilt or innocence of the defendant, are not rendered incompetent thereby when they further state that the opinions so formed would be subject to change if the evidence showed a different state of facts, and would not prevent them from rendering a true verdict.　State v. Sopher, 70 *Iowa*, 494.

On the voir dire of a juror he said that he heard a person in whom he had confidence make a statement of the case upon hearsay, and that thereupon he (the juror) formed an opinion, provided the statement was true, but had formed no conclusion as to whether or not it was true.　Held, not a disqualifying conclusion.　Balding v. State (Tex.), 4 *S. W. Rep.* 579.

A juror who admits that he has formed an opinion regarding the guilt of the accused, but says that such opinion will not prevent his rendering a true verdict according to the evidence, is not incompetent under Code Iowa, § 4405,—which provides that a person who has " formed or expressed such an opinion as to the guilt or innocence of the prisoner, as would prevent him from rendering a true verdict according to the evidence, . . ."—may be challenged for cause.　State v. Vatter, 71 *Iowa*, 557.

A juror who states that he has not formed or expressed such an opinion as will prevent him from rendering a true verdict upon the evidence, may properly be permitted to serve, unless he discloses facts that contradict his statement, and it is not error to overrule a challenge of such juror for cause.　State v. Smith (Iowa), 34 *N. W. Rep.* 597.

The issue raised upon a challenge for cause to a juror in a criminal case, on the ground that he had formed and expressed an opinion as to the issues to be tried, is one of mixed law and fact; and the finding of the trial court upon that issue ought not to be set aside by a reviewing court unless it manifestly appears that, upon the evidence, the trial court ought to have found that the juror had formed such an opinion that he could not in law be deemed impartial.　Spies v. Illinois, 123 *U. S.* 131.

Jurors who state upon their voir dire, on a criminal trial, that they have formed an opinion based on newspaper reports, may properly be asked whether, if sworn as jurors, they can give the

accused a fair and impartial trial.    State *v.* Brooks (Mo.), 5 *S. W. Rep* 257; 10 *Cent Rep.* 679; 92 *Mo.* 542.

A proffered juror upon the trial of a criminal case, having stated that he had formed an opinion from what he had read, was asked whether, notwithstanding such opinion, he could give the accused a fair and impartial trial, and replied, "That is very doubtful." *Held*, that no error was committed in sustaining a challenge by the State to the juror.    *Id.*

The allowance of challenges for cause is a matter of discretion for the trial court; and where, in a trial for murder, it appeared that the jurors challenged had, to some extent, formed an opinion as to the guilt or innocence of the accused, which they said would require evidence to remove, but thought they could try the case impartially, and their impressions had been formed from newspaper accounts and general rumor, the judgment will not be reversed; the discretion of the court not appearing to have been abused.    State *v.* Saunders, 14 *Oregon*, 300.

After a panel of jurors had been qualified and duly cautioned defendant was, on motion, allowed 48 hours to make his peremptory challenges.    On the day of the trial, four days thereafter, defendant's counsel requested a re-examination of the panel to ascertain whether any of them had become disqualified by having in the mean time read certain newspapers prejudicial to defendant.    *Held*, that in the absence of evidence that the jury had disregarded the court's admonition, and read the newspapers, the motion was properly denied, especially as it did not appear that said newspapers contained anything prejudicial to defendant.    State *v.* Rose (Mo.), 4 *S. W. Rep.* 733; 92 *Mo.* 201.

A prejudice against socialists, communists, and anarchists is nothing more than a prejudice against crime, which would not force a jury to prejudge an innocent and honest man, and would not, therefore, disqualify a juror in the trial of an indictment for a conspiracy of an anarchical nature.    Spies *v.* People, 122 *Ill.* 1.

The mere fact that a man may be opposed to the policy of permitting the sale of intoxicating liquors, and may have some prejudice against those engaged in their sale, does not necessarily disqualify him from serving as a juror on the trial of a prosecution for selling intoxicating liquors; but where he states that he would not give the testimony of one engaged in such business as much weight or credit as if he were engaged in some other business, he is *prima facie* incompetent to serve as a juror in such cause, and the trial court should, in the exercise of a sound discretion, permit him to be questioned upon that subject.    Stoots *v.* State, 108 *Ind.* 415.

. An aversion to a bogus plea of insanity does not disqualify a person from serving as a juror who is otherwise competent. State *v.* Pagels (Mo.), 92 *Mo.* 300.

A proposed juror who has testified to holding an opinion as to the guilt or innocence of the defendant, but that he could give him a fair and impartial trial, was asked, in support of a challenge for actual bias, whether the opinion was adverse to defendant, and the question was excluded. *Held*, error; following People *v.* Brown, 14 *Pac. Rep.* 90. People *v.* Kunz, 73 *Cal.* 313.

Where, on an information charging defendant with an assault with intent to commit murder, the defendant's counsel, in challenging the jury, has put to them hypothetical questions based on his theory of the case, against the objection of the district attorney, the latter may in cross-examining them, ask hypothetical questions based on his theory of the case. People *v.* Copsey, 71 *Cal.* 548.

Where a proposed juror, who was challenged for actual bias, stated on his examination that he had formed an opinion on the subject of defendant's guilt which it would require evidence to remove, but that he could give the defendant a fair trial, *held*, that the exclusion of questions asked by defendant's counsel, evidently designed to bring out the character and force of the opinion, was error. People *v.* Brown, 72 *Cal.* 390.

It is not error to refuse to sustain defendant's peremptory challenges where, on the examination as to their qualifications, two of the jurors stated that they had formed an opinion from rumor and newspaper accounts of the evidence on a former trial, that it would take evidence to remove it, but that they could decide the case according to the law and evidence and try it as impartially as if they had never heard of it. State *v.* Bryant (Mo.), 90 *Mo.* 534.

On a trial for murder where the defense of insanity was interposed, two of the jurors admitted on their *voir dire* that they had a prejudice against that defense, one stating that he believed it to be constantly used where there is no occasion for it; and the other, that he thought it ought never to be a plea for murder. Each declared that he could go into the jury-box and try the case according to evidence and be governed by the evidence under the law. *Held*, that they were competent. Hall *v.* Commonwealth (Pa.), 12 *At. Rep.* 163.

Two of the jurors admitted having read of the crime in the newspapers and formed opinions as to the guilt or innocence of the prisoner based on what they had read, that these opinions were unchanged, but declared that they could try the case impartially

notwitstanding what they had read.  *Held*, that they were compe-
tent jurors.  *Id.*

A juror who had an opinion of the case on trial merely from the
newspaper accounts thereof, stated on his *voir dire* that if selected
he would render an impartial verdict.  *Held*, that he was competent.
Doll *v.* State (Ohio), 15 *N. E. Rep.* 293.

That the trial court erroneously overruled a good challenge for
cause to an unqualified juror, and required the defence to exhaust a
peremptory challenge on him, is not reversible error when it does
not appear that any objectionable juror was forced upon the defend-
ant.  Balding *v.* State (Tex.), 4 *S. W.* 579.  (Contrary to the case
at bar.)

Under the Penal Code Cal., § 1170, permitting exceptions to the
decision of the court "in admitting or rejecting testimony on the
trial of a challenge of a juror for actual bias," no exception lies to a
ruling denying a challenge to a juror for actual cause.  People *v.*
Brown (Cal.), 13 *Pac. Rep.* 222.

When a challenge by a defendant in a criminal action to a juror,
for bias, actual or implied, is disallowed, and the juror is thereupon
peremptorily challenged by the defendant and excused, and an im-
partial and competent juror is obtained in his place, no injury is
done to the defendant if, until the jury is completed, he has other
peremptory challenges which he can use.  Hopt *v.* Utah, 120 *U. S.*
430.