# WHEELING.

STATE OF WEST VIRGINIA *v.* HAYMOND.

Submitted January 22, 1882—Decided July 1, 1882.

*(HAYMOND, JUDGE, Absent).

The sale of gum-camphor and alcohol mixed by the seller before delivery and sold as a medicine is not embraced by section 1 of chapter 107 of the Acts of the Legislature of 1877, which provides, that "No person without a State-license therefor shall sell, offer or expose for sale spirituous liquors, wine, porter, ale or beer, or any drink of a like nature," &c.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Jackson, rendered on the 21st day of March, 1879, on an indictment for selling spirituous liquors without a State-license in a case in said court then pending, wherein the State of West Virginia was plaintiff, and William Haymond was defendant, allowed upon the petition of said Haymond.

Hon. Joseph Smith, judge of the seventh judicial circuit rendered the judgment complained of.

The facts of the case fully appear in the opinion of the Court:

*R. S. Brown,* for plaintiff in error:

The sale proved was a single act of selling ingredients for a medicine, (alcohol and gum-camphor,) proven by the State's witness to have been mixed before delivery, and intended to be used, and was used, so far as used at all, for medicinal

---

*Related to the plaintiff in error.

purposes; the trial was six months after indictment found; there was but a half pint at first, and part of that remained in Pool's house at time of trial. The mixture sold is not enumerated in the statute, under which the indictment was made, and it is in no sense a *"drink"* within the meaning of the statute.

It is admitted that defendant was not indicted under the other branch of the statute for selling, as a druggist, "alcohol, &c., without a license therefor," &c. ·

The distinction between the different branches of the statute is clearly drawn in the case of *The State* v. *Bennett*, in 3 Harrington 566–7, twice cited by the learned Attorney-General, in the following language, viz :

"The question will always be, whether it is a sale of medicine, or of liquor. If an apothecary sell brandy, as such, it would be a violation of the law; if brandy made up into laudanum or other medicines, it is not a violation of the law prohibiting the sale of spirituous liquor. It will never be difficult to distinguish."

Alcohol is a usual article to dissolve gum-camphor for medicinal use, and that gum is never used in any "drink" of any kind, but it is universally used for medicine by our people, and is neither within the letter or spirit of the laws under review to prevent "tippling, which is the evil designed to be provided for by our act of assembly."

*Attorney-General Watts*, for the State :

1. The words *"spirituous liquors"* mentioned in the statute, Acts 1877, ch. 107, sec. 1, "imply, that the beverage is composed in *part* or *wholly* of alcohol extracted by distillation." Bish. Stat. Cr. sec. 1009; *Caswell* v. *State*, 2 Humph. 402; *State* v. *Moore*, 5 Blackf. 118; *Smith* v. *State*, 19 Conn. 493; Webster's Dict. "Alcohol."

2. A *"mixture"* composed of alcohol and gum-camphor will intoxicate and comes within the statute. See 3 Harring. (Del.) 565; *Kizer* v. *Randleman*, 5 Jones Law, (N. C.) 428.

3. A statute by using the word *"spirituous,"* forbids the sale of certain specified liquors, that is, such as are obtained by *distillation*. *State* v. *Biddle*, (54 N. H. 379), 1 Amer. Cr. Repts. 490; *Nevin* v. *Ladue*, 3 Denio 43.

4.. No person has a right to sell *alcohol* for *medicinal* purposes without a State-license therefor, except upon the written prescription of a practicing physician in good standing in his profession, and not of intemperate habits, specifying the name of the person and the kind and quality of  *  *  *  * liquors to be furnished him, and stating, that such liquors so prescribed are absolutely necessary as a medicine, and not as a beverage for such person. Acts 1877, ch. 107, sec. 4.

5. Upon a charge for violation of the revenue laws, if the sale be proved, the question of the *bona* or *mala fides* is a matter peculiarly within the province of the jury for consideration and determination, and one which the court above will not review; This is also true in criminal cases generally. *State* v. *Hynes,* 66 Mo. 114; *Bennett* v. *State,* 52 Ala. 370; *Barcus* v. *State,* 49 Miss. 17; *Hamilton* v. *State,* 29 Mich. 173.

JOHNSON, PRESIDENT, announced the opinion of the court:

In March, 1878, William Haymond was indicted in the circuit court of Jackson county under sec. 1 of chap. 107 of the Acts of the Legislature of 1877, which declares, that "No person without a State-license therefor shall  *  *  * sell, offer or expose for sale spirituous liquors, wines, porter, ale or beer or any drink of a like nature. And all mixtures or preparations known as 'bitters,' or otherwise, which will produce intoxication, whether they be patented or not, shall be deemed spirituous liquors within the meaning of this section." Upon the said indictment the defendant was tried in September, 1878, and was found "guilty," and his fine was fixed at $10. Upon a motion to set aside the verdict of the jury the court took time to consider, and on the 21st day of March, 1879, overruled the motion and entered judgment upon the verdict. To the overruling of said motion for a new trial the defendant excepted.

The bill of exceptions shows, that the only evidence before the jury is as follows: "The State proved by one Isaac Pool, that he bought from said defendant at his drug-storehouse in Ravenswood in this county a half pint of alcohol and some gum-camphor; that the said ingredients were mixed

by the said defendant for witness in said store in the presence of said witness, to be used for medical purposes by witness; that part of said compound was so used, and part of it was yet on hand in the house of witness."

To this judgment a writ of error was granted.

The Attorney-General here insists, that the judgment should not be disturbed; that, as alcohol is a spirituous liquor, the fact, that it was by the seller mixed with gum-camphor, could make no difference. He cites a number of authorities, which we do not think sustain his position. We will note them.

In *Caswell* v. *State*, 2 Humph. 402, and in *State* v. *Moore*, 5 Blackf. 118, it was held, that wine is not a "spirituous liquor."

In *Smith* v. *The State*, 19 Conn. 493, it was held, that the terms "wine" and "spirituous liquor" were not of the same import as "other intoxicating beverage."

In *Kizer* v. *Randleman*, 5 Jones Law, (N. C.) 428, it was held, that champagne wine was included in the word "liquors."

In *Nevin* v. *Ladue*, 3 Denio. 43, it was held, that ale was within the terms of the statute prohibiting the sale of "strong or spirituous liquors" without license.

In *State* v. *Biddle*, 54 N. H. 379, it was held, that whether ale and cider, after the process of fermentation is completed, are intoxicating liquors within the meaning of the statute, which forbids the sale of such liquors except as therein provided, is a question of fact for the jury.

The only remaining case cited by the Attorney-General, and which is relied upon by counsel for defendant, is *State* v. *Bennett*, 3 Harrington 565. The question presented in that case was, whether cordial, such as that usually sold in the stores, and such as was sold in that case, came under the description of spirituous liquor or the mixed liquor intended by the act, which prohibited the sale of any "wine, rum, brandy, gin, whiskey or any spirituous liquor by any measure less than a quart, or any punch or other mixed liquor by any measure whatever." Layton, J., in delivering the opinion of a majority of the court, said: "We think the mixed liquor intended by that act following, as it does, the specification of punch is a mixture of the spirituous or other liquor

before prohibited to be sold separately; and where the basis or substance of the liquor sold is spirituous and not mixed by the vendor, it comes within the previous prohibition of selling spirituous liquor.    Otherwise it would be impossible to convict in any case; for no liquor is entirely unmixed.    We think the cordial here proved is spirituous liquor, and of a kind intended to be prohibited by the act."    It was proved that the "cordial" was made of whisky, sweetened and scented with peppermint or other things.    The judge further said:    "It has been urged, that this construction will prohibit the sale of medicines, the basis of which is spirituous liquor, such as Godfrey's cordial, paregoric, elixir, &c.    Not so.    The question will always be, whether it is a sale of medicine or of liquor.    If an apothecary sell brandy as such, it would be a violation of the law; if brandy made up into laudanum or other medicines, it is not a violation of a law prohibiting the sale of spirituous liquor.    It will never be difficult to distinguish common store cordial in sweetened whisky sold as spirituous liquor.    Godfrey's cordial is a very different thing, known for and sold as medicine; and there can be no danger by the sale of it of promoting tippling, which is the evil designed to be provided for by our act of Assembly."

It is certainly the evil of tippling, that is designed to be prevented by our act, under which the indictment in this case was found.    It was never before suggested to my mind, that the sale by a druggist of gum-camphor and alcohol mixed by him could in any way promote tippling.    In almost every home will be found the "camphor-bottle," containing gum-camphor dissolved in distilled spirits, and used exclusively as a medicine, and kept ready for use when needed, but unpalatable as a beverage, and never used as such.    It certainly never was designed by the legislature to prohibit the sale of such mixture by the statute, under which the indictment in this case was found.    The only evidence in this record shows clearly, that the alcohol and gum-camphor were both sold by the defendant to the witness and mixed by the defendant, and that a half pint of the mixture had lasted witness more than six months.    The offence charged under the statue was not proved.    There was before the jury no evi-

dence to sustain the verdict; and it should have been set aside.

The judgment of the circuit court is reversed; and the verdict is set aside and a new trial granted; and the case remanded.

JUDGES GREEN AND SNYDER CONCURRED.

JUDGMENT REVERSED.