# KLEINDIENST *v.* UNITED STATES.

ADULTERY; DISQUALIFICATION OF JURORS; NECESSITY OF CHALLENGES: JOINDER OF OFFENSES; SPECIFICATION OF OFFENSES; PUNISHMENT.

1. A motion asking either that the trial of a man for adultery be certified to another division of the court, or that a jury panel be required to be certified from another division to hear the case, should be granted, where it is admitted that the woman with whom the defendant was charged with having committed adultery was tried and convicted in the same court for the crime of keeping a bawdy-house, that the jury in that case was drawn from the same panel from which a jury to try defendant would be drawn, and that in the trial of such woman evidence was given tending to show that the defendant was a frequenter, for immoral purpose, of the house kept by her; since a trial forced upon the defendant in such circumstances could be little more than a farce, with the constitutional guaranty of an impartial jury overridden and the humane presumption of innocence reversed. (Mr. Chief Justice SMYTH, dissenting.)

2. The refusal of the trial court to grant the defendant's motion for another jury panel, upon an uncontradicted affidavit that every member of the panel from which a jury to try him was drawn was disqualified because of prejudice, cannot be sustained upon the ground that the record does not disclose any challenge, either peremptory or for cause, of the alleged objectionable jurors, or show that the peremptory challenges were exhausted, because, by the use of his challenges, he would have been unable to prevent the sitting of disqualified jurors; nor was it necessary for him to examine the jurors upon a *voir dire* for the purpose of determining whether they were prejudiced, as he had brought to the attention of the court undisputed facts which showed beyond question the disqualification of the entire panel. (Mr. Chief Justice SMYTH, dissenting.)

3. Section 1024 of the United States Revised Statutes, Comp. Stat. 1916, sec. 1690, authorizing the joinder of offenses applies to the District of Columbia. (Citing *Bass v. United States*, 20 App. D. C. 232;

NOTE.—Authorities discussing the question as to competency of jurors who have served in the same or similar case are collated in a note in 68 L.R.A. 871.

*Benson* v. *United States*, 27 App. D. C. 331; *Lee* v. *United States*, 37 App. D. C. 442; *Miller* v. *United States*, 38 App. D. C. 361, and *Kidwell* v. *United States*, 38 App. D. C. 566.)

4. Two acts of adultery by the defendant with the same woman, provable by the same evidence, may be joined under sec. 1024 of the U. S. Revised Statutes, authorizing the joinder in one indictment of counts for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined. (*Citing Kidwell* v. *United States*, 38 App. D. C. 566.)

5. The failure of the government, upon a prosecution for adultery under an indictment containing two counts, to identify the two offenses until the close of the defendant's evidence, is prejudicial error, where its evidence showed repeated offenses of adultery, covering a period of more than a year and including the period named by it at the opening of the case, and almost a score of offenses between the latter period.    (Mr. Chief Justice SMYTH, dissenting.)

6. One convicted of adultery in the supreme court of the District of Columbia should be sentenced under sec. 874 of the District Code (31 Stat. at L. 1332, chap. 854), and not under sec. 316 of the Federal Penal Code (35 Stat. at L. 1149, chap. 321, Comp. Stat. 1916, sec. 10,489), since such sec. 874 is within the exception of chapter 13 of the Federal Code, in which appears sec. 316, which chapter ordains that, "except as otherwise expressly provided," the offenses defined therein shall be punished as thereinafter provided.    (Citing *Johnson* v. *United States*, 38 App. D. C. 347.)

No. 3153.   Submitted October 8, 1918.   Decided December 2, 1918.

HEARING on an appeal from a judgment of conviction of the Supreme Court of the District of Columbia in a criminal prosecution for adultery.                                   *Reversed.*

The COURT in the opinion stated the facts as follows:

Appeal from a judgment in the supreme court of the District, where the defendant, Raymond O. Kleindienst, was convicted upon the two counts of an indictment charging him with adultery with Margaret Stout.

The case was called for trial on May 7, 1915, and thereupon defendant filed motions asking either that it be certified to another division of the court, or that a jury panel be required

to be certified from another division to hear the case. The grounds of these motions were that Margaret Stout was tried and convicted in the same court on May 3d, for the crime of keeping a bawdyhouse; that the jury in that case was drawn from the same panel from which a jury to try defendant would be drawn; that in the trial of Margaret Stout "evidence was given tending to show that the defendant herein was a frequenter for immoral purposes, of a house of prostitution kept by the said Margaret Stout, and that said evidence was such as to render impossible a fair and impartial trial of the defendant herein before the regular jurors now impaneled as jurors in this division of the court, or before any of the said jurors now in regular attendance in said division." In support of these motions the defendant filed his affidavit, setting forth that the members of the panel then in attendance upon the court "who were not selected as jurymen to serve in the case of *United States* v. *Margaret Stout* were in the court room, during the taking of the evidence, or the greater part thereof, upon the trial of the case of the said Margaret Stout. That during the trial of the case of the said Margaret Stout the name of affiant was frequently mentioned as a person who frequented the said house of Margaret Stout; that while a witness for the prosecution was giving her testimony upon the trial of said case, namely, Gertrude Meyers, she testified that a man by the name of Kleindienst was on a certain night in said house and 'stayed upstairs' at the time of an altercation between said Margaret Stout and a male visitor; whereupon she was then asked by the court: 'What Kleindienst was that, the detective Kleindienst?' and the witness answered, 'Yes,' all of which was in the presence and hearing of the jurors impaneled to try said case, as well as in the presence and hearing of the other jurors then in the court room; and that upon several other occasions during the taking of testimony in the said case of Margaret Stout, the name of affiant was used, as identifying a man who frequented said house of said Margaret Stout." No attempt was made by the government to meet this affidavit, nor did the government, so far as the record discloses, object to the granting of either

motion, but over the objection and exception of the defendant the court overruled both motions and directed that the trial proceed. The record shows that a jury was selected "which included seven members who had sat in the trial of the Margaret Stout mentioned in the foregoing affidavit."

The first assignment of error relates to the action of the court in denying the above motions.

*Mr. Daniel Thew Wright* and *Mr. T. Morris Wampler,* for the appellant, in their brief cited:

*Andrews* v. *People,* 117 Ill. 195; *Bass* v. *State,* 103 Ga. 231; *Benson* v. *United States,* 27 App. D. C. 333; *Billings* v. *United States,* 42 App. D. C. 413; *Binkley* v. *State,* 34 Neb. 757; *Brevaldo* v. *State,* 21 Fla. 789; *Buchanan* v. *State,* 55 Fla. 154; *Burgess* v. *State,* 81 Miss. 482; *Cane* v. *People,* 8 Wend. 203; *Cochran* v. *United States,* 157 U. S. 298; *Coffin* v. *United States,* 156 U. S. 432; *Com.* v. *Fuller,* 163 Mass. 500; *Com.* v. *Webster,* 5 Cush. 320; *Com.* v. *Nichols,* 114 Mass. 285; *Com.* v. *Shanor,* 29 Pa. Super. Ct. 358; *Com.* v. *Littlejohn,* 15 Mass. 162; *Com.* v. *Narcross,* 9 Mass. 493; *Com.* v. *Merrien,* 14 Pick. 518; *Craft* v. *State,* 78 S. E. 776; *Crawford* v. *State,* 31 Tex. Crim. Rep. 51; *Davis* v. *United States,* 18 App. D. C. 468; *District of Columbia* v. *Gray,* 1 App. D. C. 502; *Douglass* v. *McAllister,* 3 Cranch, 299; *Edginton* v. *United States,* 164 U. S. 361; *Flint* v. *Com.* 81 Ky. 186; *Fundenburg* v. *State,* 23 Tex. App. 392; *Fulton* v. *United States,* 45 App. D. C. 48; *Gaines* v. *Hennen,* 24 How. 605; *Gaines* v. *Relf,* 12 How. 560; *Goodhue* v. *People,* 98 Ill. 38; *Grant* v. *State,* 3 Tex. App. 1; *Ham's Case,* 11 Me. 391; *Henderson's Case,* 98 Va. 798; *Howard* v. *State,* 108 Ala. 574; *Hicks* v. *United States,* 150 U. S. 442; *Ivy* v. *Georgia,* 113 Ga. 1062; *Johnson* v. *State,* 63 Miss. 313; *Johnson* v. *United States,* 224 U. S. 417; *Kane* v. *People,* 8 Wend. 203; *Ketchingman* v. *State,* 6 Wis. 429; *Kidwell* v. *United States,* 38 App. D. C. 566; *Kotter* v. *People,* 150 Ill. 441; *Lawson* v. *State,* 20 Ala. 65; *Leahy* v. *State,* 31 Neb. 566; *Lyons* v. *People,* 68 Ill. 272; *McElroy* v. *United*

*States,* 164 U. S. 80; *McGregg* v. *State,* 4 Ind. 103; *Mayo* v. *State,* 30 Ala. 32; *Merchants, etc. Ins. Co.* v. *Barring,* 20 Wall. 159; *Miner* v. *People,* 58 Ill. 59; *Morris* v. *Miller,* 4 Burr. 2059; *Mullen* v. *United States,* 106 Fed. 894; *Nelms* v. *State,* 58 Miss. 362; *Newby* v. *People,* 26 Colo. 16; *Nobles* v. *State,* 127 Ga. 212; *Patterson* v. *Gaines,* 6 How. 597; *People* v. *Flaherty,* 162 N. Y. 538; *People* v. *Kemp,* 76 Mich. 412; *People* v. *O'Bryan,* 1 Wheel. Crim. Rep. 21; *People* v. *Isham,* 109 Mich. 72; *People* v. *Lane,* 49 Mich. 340; *People* v. *Lambert,* 5 Mich. 365; *People* v. *Humphrey,* 7 Johns. 314; *People* v. *Broughton,* 49 Mich. 339; *People* v. *Hess,* 85 Mich. 128; *People* v. *Lee Chuck,* 78 Cal. 317; *People* v. *Benson,* 52 Cal. 380; *People* v. *Fielding,* 46 L.R.A. 641; *People* v. *Carr,* 64 Mich. 702; *People* v. *Dane,* 59 Mich. 550; *People* v. *Montague,* 71 Mich. 447; *Pilkinton* v. *State,* 19 Tex. 214; *Pointer* v. *United States,* 151 U. S. 400; *Posey* v. *State,* 26 App. D. C. 302; *Prince* v. *State,* 100 Ala. 144; *Randall* v. *State,* 132 Ind. 539; *Reg.* v. *Barry,* 4 Fost. & F. 392; *Reg.* v. *Bassett,* 1 Cox, C. C. 51; *Reg.* v. *Ward,* 10 Cox, C. C. 42; *Sabens* v. *United States,* 40 App. D. C. 440; *Smith* v. *DuBose,* 6 Am. St. Rep. 274; *Spraggins* v. *State,* 139 Ala. 93; *State* v. *Norris,* 122 Iowa, 156; *State* v. *Rice,* 80 N. C. 442; *State* v. *Lincoln,* 49 N. H. 464; *State* v. *Potter,* 3 Harr. (Del.) 561; *State* v. *Carrigan,* 210 Mo. 351; *State* v. *Gilmore,* 110 Mo. 1; *State* v. *Jackson,* 17 Mo. 544; *State* v. *Jackson,* — N. J. —, 46 Atl. 767; *State* v. *Kirby,* 7 Mo. 317; *State* v. *Nelson,* 8 N. H. 165; *State* v. *Henderson,* 84 Iowa, 161; *State* v. *Witham,* 72 Me. 531; *State* v. *Snover,* 65 N. J. L. 289; *State* v. *Eggleston,* 45 Or. 346; *State* v. *Thompson,* 31 Utah, 228; *State* v. *Brown,* — Iowa, —, 121 N. W. 513; *State* v. *Hodgkiss,* 19 Me. 155; *State* v. *Rood,* 12 Vt. 392; *State* v. *Libby,* 44 Me. 472; *State* v. *Armstrong,* 4 Minn. 335; *State* v. *Winkley,* 14 N. H. 480; *State* v. *Rosswell,* 6 Conn. 449; *State* v. *Isenhart,* 32 Or. 173; *State* v. *Springer,* 40 Utah, 480; *State* v. *Bowe,* 61 Me. 171; *State* v. *Guest,* 100 N. C. 410; *State* v. *Kemp,* 87 N. C. 538; *State* v. *Peppin,* 88 N. C. 646; *State* v. *Irwin,* — Idaho, —, 60 L.R.A. 716; *State* v. *Irwin,* — Idaho, —, 71 Pac. 608;

*Texas, etc. R. Co.* v. *Volk,* 151 U. S. 78; *Thorwegan* v. *King,* 111 U. S. 553; *United States* v. *Griego,* 11 N. M. 392; *Vaughan* v. *State,* 58 Ark. 353; *Wedgwood's Case,* 8 Me. 75; *West* v. *People,* 137 Ill. 187; *West* v. *State,* 1 Wis. 218; *Wood* v. *State,* 62 Ga. 406; *Young* v. *Rex,* 3 T. R. 106; D. C. Code, sec. 874; U. S. Penal Code, secs. 311, 316, 341; Rev. Stat. sec. 1024; 2 Kent, Com. 12th ed. 88; Endlich, Interpretation of Statutes, 288; 1 Bishop, New Crim. Proc. sec. 448; 1 Wharton, Crim. Ev. 10th ed. 405; 12 Cyc. 624, 625; 2 Enc. L. & P. 285; 2 C. J. 23.

*Mr. John E. Laskey,* United States Attorney, and *Mr. Bolitha J. Laws,* Assistant, for the appellee, in their brief cited:

*Bass* v. *State,* 103 Ga. 227; *Bass* v. *United States,* 20 App. D. C. 232; *Benson* v. *United States,* 27 App. D. C. 331; *Dowling* v. *United States,* 41 App. D. C. 18; *Edgington* v. *United States,* 164 U. S. 366; *Fletcher* v. *United States,* 42 App. D. C. 68; *Fulton* v. *United States,* 45 App. D. C. 27; *Griffee* v. *State,* 1 Lea, 41; *Hopt* v. *Utah,* 120 U. S. 430; *Humphries* v. *State,* 100 Ga. 260; *Johnson* v. *United States,* 225 U. S. 419; *Johnson* v. *United States,* 38 App. D. C. 347; *Jones* v. *State,* 90 Ga. 616; *Kidwell* v. *United States,* 38 App. D. C. 566; *Kohl* v. *Lehlback,* 160 U. S. 293; *Lawson* v. *State,* 20 Ala. 65; *Lee* v. *United States,* 37 App. D. C. 442; *Lorenz* v. *United States,* 24 App. D. C. 391; *McElroy* v. *United States,* 164 U. S. 76; *McKinney* v. *State,* 8 Tex. App. 626; *Metropolitan R. Co.* v. *Snashall,* 3 App. D. C. 420; *Miller* v. *United States,* 38 App. D. C. 361; *Paolucci* v. *United States,* 30 App. D. C. 217; *People* v. *Flaherty,* 162 N. Y. 532; *Presbrey* v. *Thomas,* 1 App. D. C. 171; *Price* v. *United States,* 14 App. D. C. 391; *Pointer* v. *United States,* 151 U. S. 403; *Queenan* v. *Oklahoma,* 190 U. S. 548; *Raub* v. *Carpenter,* 187 U. S. 159; *Reagan* v. *United States,* 157 U. S. 301; *Schnell* v. *State,* 92 Ga. 459; *State* v. *Brogden,* 111 N. C. 656; *State* v. *Campbell,* 35 S. C. 28; *State* v. *Clyburg,* 16 S. C. 375; *State* v. *Crimmins,* 31 Kan. 376; *State* v. *Gill,* 14 S. C. 410; *State* v. *Hughes,* — Mo. —, 167 S. W. 529; *State* v. *Jackson,* 32 S. C. 27; *State* v. *La*

*Croix,* 8 S. D. 369; *State* v. *Schueller,* — Minn. —, 138 N.
W. 937; *State* v. *Libby,* 44 Me. 472; *State* v. *McIntosh,* 109
Iowa, 209; *State* v. *McKinney,* 254 Mo. 698; *State* v. *Snover,*
65 N. J. L. 286; *Sutton* v. *State,* 124 Ga. 815; *Travers* v.
*United States,* 6 App. D. C. 450; *Thompson* v. *State,* 109 Ga.
272; Underhill, Crim. Ev. 2d cd. ¶ 382, sec. 381; *Wassum* v.
*Feeney,* 121 Mass. 93; Wigmore, Ev. 2082–2086; *Williams* v.
*United States,* 168 U. S. 382; D. C. Code, secs. 915, 919,
1640; Federal Penal Code, sec. 311; U. S. Rev. Stat. sec. 1024.

, Mr. Justice ROBB delivered the opinion of the court:

The government contends: First, "that the defendant suffered
no prejudice in this matter, inasmuch as the law authorizes,
in adultery cases, proof that the woman was reputed to be a
prostitute, and that the house was reputed to be a bawdy-
house;" and, second, that the record discloses no challenge,
either peremptory or for cause, of the alleged objectionable
jurors, nor does it show the peremptory challenges to have been
exhausted.

'Article 6 of the Amendments to the Constitution declares
that "in all criminal prosecutions the accused shall enjoy the
right to a speedy and public trial, by an impartial jury * * *
to be informed of the nature and cause of the accusation; to
be confronted with the witnesses against him; to have com-
pulsory process for obtaining witnesses in his favor; and to
have the assistance of counsel for his defense." It is admitted
that the government introduced evidence on the trial of Mar-
garet Stout, that defendant "was a frequenter for immoral
purposes of a house of prostitution" kept by her. It also is
admitted that the trial court sharply brought the identity of
defendant to the attention of the jury, while there was upon
the stand a witness whose testimony in the present case was
relied upon by the government to establish defendant's guilt
under one count of the indictment against him. Defendant
could take no part whatever in that trial, although his interests
were vitally involved. He was not confronted with the wit-

nesses against him. He could not cross-examine them, nor could he introduce any evidence in his own behalf. When called to trial, therefore, he was confronted with this extraordinary situation: Twelve members of the panel from which a jury to try him was to be selected already had reached a conclusion wholly inconsistent with his plea of not guilty. The attitude of the other members of the panel toward him could have been little better; for, assuming that they were intelligent men, how could it reasonably be said that having heard the evidence against him and having had his identity sharply brought to their attention by the trial court while that evidence was being introduced, they were not prejudiced against him? A trial forced upon a defendant in those circumstances could be little more than a farce, with the constitutional guaranty of an impartial jury overridden and the humane presumption of innocence reversed. Defendant had the absolute right to be tried by a jury free from bias and prejudice, and not by a jury that already had heard material evidence against him, under circumstances that could not have failed at least to raise a very grave doubt as to his innocence. To our minds there was every reason why one of these motions should have been granted, and no reason why it should not.

The second contention of the government is equally untenable. The right of challenge has its source in the common law, and always has been held essential to a trial by jury. In *Lewis v. United States,* 146 U. S. 370, 376, 36 L. ed. 1011, 1014, 13 Sup. Ct. Rep. 136, the court quotes from Blackstone and Story, who said that the right of challenge is "a provision full of that tenderness and humanity to prisoners for which our English laws are justly famous." It is an arbitrary and absolute provision, and permits an accused to exclude from the jury and juror against whom he entertains prejudice, although not founded upon any reason which would disqualify him. *People v. McQuade,* 110 N. Y. 284, 1 L.R.A. 273, 18 N. E. 156. Of what practical use, therefore, would be this provision if the government's contention be accepted? In the present case we have found that, upon the admitted facts, every member of the

panel was disqualified because of prejudice. Defendant, therefore, even though he exhausted his peremptory challenges in excluding jurors who should have been excluded for cause, still would have been unable to prevent the sitting of disqualified jurors. Indeed, while the record does not so show, counsel for defendant in the argument at bar stated without contradiction that defendant's peremptory challenges were exhausted. The government cites *Hopt* v. *Utah,* 120 U. S. 430, 30 L. ed. 708, 7 Sup. Ct. Rep. 614, in support of its contention, but in that case it affirmatively appeared that the defendant had not exhausted his peremptory challenges, and that no prejudice had resulted to him from the ruling of the court in disallowing two challenges for bias, for the reason as pointed out by the court that "impartial and competent jurors were obtained in their place." Further comment is unnecessary.

But, says the government, defendant should have examined the jurors upon a *voir dire* for the purpose of determining "whether or not those jurors were prejudiced against defendant or would be prejudiced against him." Having brought to the attention of the court undisputed facts which showed beyond question the disqualification of those jurors, we think defendant fully protected his rights. He told the court, as plainly as he could, that he was dissatisfied with every member of the panel, and the reasons he gave left no room for doubt. There was no fact in dispute. Why, then, was it necessary to examine the jurors? "In such circumstances it was unnecessary to go through the idle form of articulating the obvious." *Kansas City Southern R. Co.* v. *Jones,* 241 U. S. 181, 183, 60 L. ed. 943, 945, 36 Sup. Ct. Rep. 513. Had any juror insisted that he was not prejudiced, his answer would have been inconsistent with human experience. *Dilworth* v. *Com.* 12 Gratt. 689, 65 Am. Dec. 264. We rule, therefore, that under the admitted facts the refusal of the court to grant one of these motions deprived defendant of a very substantial right, and amounted to such an abuse of discretion as to require a reversal of the case.

It is next contended that sec. 1024 of the Revised Statutes, Comp. Stat. 1916, sec. 1690, authorizing the joinder of of-

fenses, does not apply to the District of Columbia; and that, even if it does, the joinder in this case was improper. We think both contentions untenable. Section 1024 does apply to the District of Columbia. *Bass* v. *United States,* 20 App. D. C. 232; *Benson* v. *United States,* 27 App. D. C. 331; *Lee* v. *United States,* 37 App. D. C. 442; *Miller* v. *United States,* 38 App. D. C. 361, 40 L.R.A.(N.S.) 973; *Kidwell* v. *United States,* 38 App. D. C. 566. Section 1024 authorizes the joinder in one indictment of counts "for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined." In the *Kidwell Case* the question was reviewed, and the court reached the conclusion that the clause "which may be properly joined" vests in the trial court a sound discretion in deciding whether a fair and impartial trial will be prevented by a joinder. In *Williamson* v. *United States,* 168 U. S. 382, 42 L. ed. 509, 18 Sup. Ct. Rep. 92, there was sustained a consolidation of two indictments, each of which charged the crime of extortionately receiving from a different Chinese person a certain sum of money. The court said: "Here, the indictments were against the same person, the offenses charged were of the same kind, were provable by the same kind of evidence, and could be tried together without embarrassing the accused in making his defense." In the present case the charges were against the same person and the offenses charged were of the same kind, provable by the same evidence. We are clearly of the view that the joinder was proper.

We come now to a more serious question. In the first count of the indictment defendant was charged with the commission of adultery on or about the 5th day of March, 1915, and in the second count on or about the 10th day of April of the same year. At the opening of the trial the defendant, through his counsel, moved the court to require the government to notify him whether the government would undertake to prove offenses as of the dates alleged in the indictment, and, if not, "to otherwise identify the two specific transactions." Counsel for the government finally said that the offense laid in the first count "was committed between the 23d day of February and the 15th

day of March, and the other offense was committed between the 15th day of March and the 10th day of April;" in other words, that the two offenses were committed between February 23d and April 10th. A more particular specification was requested, but the court declined to require it. The government proceeded to introduce evidence, and according to the statement in the government's brief, the testimony "tended to show repeated offenses of adultery by the defendant with Margaret Stout, beginning at a period prior to February, 1914, and continuing until April, 1915. These offenses were committed at eight different houses maintained during said period by Margaret Stout." The evidence further tended to show that between February 23d and April 10th, the period mentioned by the government at the opening of its case, defendant visited Margaret Stout for immoral purposes as often as three or four times each week and sometimes daily. At the close of the government's case defendant's counsel moved the court to require the government to identify and specify the two offenses for which the government would ask a conviction, but over the objection and exception of the defendant the court overruled the motion. Thereupon evidence was introduced in behalf of the defendant, and, at the close of all the evidence, defendant repeated his motion, which the court took under consideration until after the noon recess, just prior to the argument of the case, when the government identified two offenses upon which it would ask a conviction. The failure of the court to require an earlier identification is assigned as error.

It appears, therefore, that notwithstanding evidence was introduced tending to show "repeated offenses of adultery" covering a period of more than a year, and including the period named by the government at the opening of the case, not until his counsel was called upon to argue his case to the jury did defendant know upon which offenses the government would ask a conviction. He was embarrassed and prejudiced in the introduction of evidence in defense by this lack of knowledge. In *People* v. *Flaherty,* 162 N. Y. 540, 57 N. E. 73, such a practice was severely condemned, and in *State* v. *Norris,* 122 Iowa,

155, 97 N. W. 999, the court said: "It may be that the precise date and place could not properly be required, but this is never exacted farther than is necessary to identify the transaction. * * * Greater certainty than is possible under the evidence is never required. * * * But where the periods are distinct and separate, as in the instant case, the rights of the defendant are not duly guarded when the election is denied; for this imposes upon him the hardship of meeting numerous charges at different periods of time, instead of within a definite period, upon which a conviction must be predicated, and exposes him to the danger of the jurors finding him guilty under proof of several transactions, separated by distinct intervals, when they might be unable to agree upon his guilt of any offense if limited to a particular date or period." To the same effect are *Com.* v. *Fuller,* 163 Mass. 500, 40 N. E. 764, and *Ketchingman* v. *State,* 6 Wis. 429. At the close of its evidence the government was in a position to identify the two offenses upon which it would rely before the jury, and it then should have been compelled to do so. If the government then was unable thus to identify, it is apparent that there was no case for the consideration of the jury. Notwithstanding that the evidence for the government tended to show the commission of almost a score of offenses between the 23d of February and the 10th of April, the only specification defendant had when he introduced his evidence was that the government ultimately would fix upon two of those offenses,—presumably the two as to which his defense might prove the weakest. Before he introduced his evidence, defendant was entitled to a much more definite identification of the offenses relied upon, the withholding of which enabled the government to rely not so much upon its own case, but upon any developed weakness of defendant's defense as to particular transactions. While prejudice did result to the defendant, no prejudice could have resulted to the government had it been compelled, at the close of its evidence, to identify the two offenses relied upon.

One other question requires attention at this time. The court sentenced defendant under sec. 316 of the Federal Penal

Code [35 Stat. at L. 1149, chap. 321, Comp. Stat. 1916, sec. 10,489] to serve a period of three years in the penitentiary. Defendant contends that sec. 874 of the District Code [31 Stat. at L. 1332, chap. 854] applied, under which he might have been fined not to exceed $500, or imprisoned not exceeding one year, or both.   In *Johnson* v. *United States,* 38 App. D. C. 347, 225 U. S. 405, 56 L. ed. 1142, 32 Sup. Ct. Rep. 748, it was ruled that the two Codes, having definite territorial operation, may subsist together; that the Federal Code embraces general legislation of general operation, while the District Code embraces local legislation of local operation; and that an intent to affect or repeal the latter by the enactment of the former must clearly appear, and will not be implied.   Chapter 13 of the Federal Code, in which appears sec. 316, ordains that "except as otherwise expressly provided," the offenses defined in the chapter shall be punished as thereinafter provided.   Having in mind what was ruled in the *Johnson Case,* we are of the view that the quoted words embrace, and were intended to embrace, sec. 874 of our Code.   As pointed out in that case by both courts, apparently every prior enactment of Congress that in any way conflicted with the provisions of the Federal Code was in terms repealed.   Section 874 was not mentioned in the repealed provisions.   Moreover, since every section in chapter 13 of the Federal Code provides punishment for violation of its provisions, the phrase quoted is meaningless unless given the interpretation we have placed upon it.   We think it should be given that interpretation.

There are other assignments of error, but, since they relate to questions that are not likely to arise at another trial, we do not notice them here.

Judgment reversed and cause remanded for a new trial.

*Reversed.*

Mr. Chief Justice SMYTH, dissenting:

I cannot consent to that part of the decision of the court ordering a new trial.

Of course the defendant was entitled to a fair trial.   This

goes without saying. But a fair trial is one in obedience to the law of the land, and if he had such a trial he has no just cause for complaint.

According to defendant's affidavit, which we must assume was made as strong as the facts would permit (*Stephen* v. *Beall,* 22 Wall. 329, 339, 22 L. ed. 786, 788), the only testimony given in the *Stout Case* with respect to him was to the effect that he had frequented the Stout woman's house, and had on one occasion "stayed upstairs at the time of an altercation between her and a male visitor." If he had denied this, or had produced no evidence at all upon the subject, there might be some ground for his contention that the jury was biased by the testimony which they had heard, but he did not follow that course. Instead he took the stand and admitted substantially all that he alleged in his affidavit the jurors had heard. He averred that as a police officer he was assigned to the "red light" district, and that his work took him into houses of ill fame; that he knew the Stout woman when she kept such a house in this city; that he had been in her house and in apartments operated by her a number of times by himself and with other police officers; that he had a real estate transaction with her and that some of his visits were with respect to it, but asserted that he had not committed with her the offense charged. The jurors, then, had learned nothing from the testimony in the Stout case concerning him which he did not voluntarily admit upon his own trial.

The two motions which he filed were in the nature of attacks upon the array. Such attacks, with some rare exceptions, relate only to the summoning of the panel, and have no concern with the qualities of individual jurymen. 16 R. C. L. 57. Their unfitness to sit in a case is not properly raised by motions supported by an *ex parte* affidavit, as was done here. Every practising lawyer knows that affidavits are very unsatisfactory means for developing the truth. The appropriate method is by questions addressed to the individual jurors upon their *voir dire.* In the case at bar, if the jurors had been individually interrogated by the defendant and the government as to whether

or not they had heard the testimony in the *Stout Case,* and, if so, what impression, if any, it had left upon their minds touching the guilt or innocence of the defendant, it might have been disclosed either that they had not heard the testimony, or, having heard it, that they paid little attention to it, and that it had no weight with them whatever. Their incompetency was by no means "obvious." The question decided in *Kansas City Southern R. Co.* v. *Jones,* 241 U. S. 181, 183, 60 L. ed. 943, 945, 36 Sup. Ct. Rep. 513, cited by the majority, is quite different from the one before us. Even if the jurors had an opinion founded on what they had heard, it would not necessarily disqualify them from serving in the case. Mr. Justice Robb, speaking for this court in *Miller* v. *United States,* 41 App. D. C. 52, 64, a criminal action, said of a juror who had an opinion based on a newspaper account of the crime charged, that he was not disqualified, since he had sworn upon his *voir dire* "that it would require no evidence to remove it [the opinion], and that it would have no bearing in his mind upon his final decision of the questions involved in the case." (See also *Paolucci* v. *United States,* 30 App. D. C. 217, 12 Ann. Cas. 110.) By the decision of the majority it is assumed not only that the jurors had formed an opinion, but also that it was such an opinion as would prevent them from giving the defendant a fair trial.

Of course I do not mean to say that, in every instance where a prospective juror declares that his opinion would not influence him as a juryman, the court should accept his statement as true. Each case must depend upon its own circumstances. The disposition of the matter lies in the sound discretion of the trial court; and the exercise of that discretion will not be disturbed, says this court in the *Miller* and *Paolucci Cases,* except where the discretion has been abused,—where there is absolutely nothing to sustain the decision reached. "The case must be one in which it is manifest the law left nothing to the 'conscience or discretion of the court.' " *Reynolds* v. *United States,* 98 U. S. 145, 156, 25 L. ed. 244, 246. This cannot be said of the case before us.

Nor is there anything inconsistent between the conviction of the Stout woman and defendant's plea of not guilty. The charge against her was for keeping a bawdyhouse, not for participation in the crime for which he was indicted. Her guilt and his innocence could stand together in perfect harmony. The showing made by the affidavit was entirely insufficient to establish that the jurors were not competent under the law to impartially try the defendant.

Assuming the jurymen were prejudiced against the defendant, he waived any right which he had to object to their sitting in his case. *Queenan* v. *Oklahoma,* 190 U. S. 548, 551, 47 L. ed. 1175, 1178, 23 Sup. Ct. Rep. 762; *Alexander* v. *United States,* 138 U. S. 353, 34 L. ed. 954, 11 Sup. Ct. Rep. 350; *Thompson* v. *State,* 109 Ga. 272, 34 S. E. 579. The overruling of the motions did the defendant no harm. His complaint is with regard to the action of the court in receiving the jurors as triers of his case, but he made no objection to this action at the time it took place, either by challenging the jurors for cause, or by peremptorily challenging them. "It is the duty of counsel," says the Supreme Court of the United States in the *Alexander Case,* "seasonably to call the attention of the court to any error in impaneling the jury, * * * and in case of an adverse ruling to note an exception." "Seasonably," I take it, means at the time the action is taken from which the prejudice results. In the *Thompson Case* the court, speaking of the qualifications of the jurors, said: "In order to determine whether they were competent or not a remedy was afforded, not by challenge to the array, but by challenge to the poll and each separate juror put upon his *voir dire* to ascertain his state of feeling toward the defendant before he assumed his public duty as a juror in the trial of the case. This was not done, and the partiality of the jurors was not questioned in any legal way, and it must therefore be held, in the absence of the exercise of his right by the defendant, that the jurors were competent." This language is very pertinent to the case before us.

Moreover, it is a general principle, to which possibly there

are some exceptions, that a party must exhaust all his remedies in the lower court before appealing to the court of review. 3 C. J. sec. 67; *McLean* v. *Territory,* 8 Ariz. 195, 71 Pac. 926, 928; *Johnston* v. *Callahan,* 146 Cal. 212, 214, 79 Pac. 870; *Spies* v. *Illinois,* 123 U. S. 131, 179, 31 L. ed. 80, 90, 8 Sup. Ct. Rep. 21. This doctrine is a wise one. It is in the interest of an expeditious and effective administration of the law, and should be enforced strictly by appellate courts. If it had been developed on their *voir dire* that the the jurors could not fairly try the defendant, they would have been removed on a challenge for cause; for we must presume that the court would have ruled correctly. *State ex rel. Delgado* v. *Romero,* 17 N. M. 81, 124 Pac. 649, Ann. Cas. 1914C, 1114. The presumption is that courts will do "what the Constitution and laws of the United States require." *Shreveport* v. *Cole,* 129 U. S. 36, 42, 32 L. ed. 589, 591, 9 Sup. Ct. Rep. 210. "In a court of error," says Mr. Chief Justice Waite, "every presumption is in favor of the validity of the judgment." *Boley* v. *Griswold,* 20 Wall. 486, 488, 22 L. ed. 375, 376. The majority opinion proceeds upon the assumption that the court would have erroneously overruled a challenge for cause. This finds no warrant in the law.

And if the court had refused to reject the unfit jurors, defendant would still have his remedy by peremptory challenges, but he failed to use even that. I know it is said that when his counsel stated during the argument that he had exhausted all his peremptory challenges, the government's counsel did not deny it. What the government's counsel said was that the record did not show that the defendant had exhausted his peremptory challenges. This is in harmony with correct practice, and should have been sufficient to destroy any effect which the statement of defendant's counsel might otherwise have had. We should not consider anything outside the record unless we are prepared to establish the loose and indecorous method of resorting to a debate at the bar, instead of the record, for the purpose of learning what took place in the lower court.

The record reveals that seven of the jurors who sat in the

trial of the Stout woman were members of the jury which tried the defendant. For reasons already given I do not think that this disqualified them, but if it did, why did not the defendant challenge them? **The** record gives no answer, nor does it show when the fact that they served on the Stout jury was brought to the attention of the court. For aught that appears the court may not have known anything about it until after the verdict, and, if it did not, it certainly committed no error in permitting them to remain. The appellate court "cannot presume error. It must be made manifest." *Cliquot's Champagne,* 3 Wall. 114, 140, 18 L. ed. 116, 119. See also *Sturges* v. *Carter,* 114 U. S. 511, 522, 29 L. ed. 240, 244, 5 Sup. Ct. Rep. 1014; *Bear Lake & R. Waterworks & Irrig. Co.* v. *Garland,* 164 U. S. 1, 25, 41 L. ed. 327, 336, 17 Sup. Ct. Rep. 7.

Furthermore, it seems to me that this subject is completely disposed of by sec. 919 of the Code. It says: "No verdict shall be set aside for any cause which might be alleged as ground for challenge of a juror before the jury are sworn, except when the objection to the juror is that he had a bias against the defendant such as would have disqualified him, and such disqualification was not known to or suspected by the defendant or his counsel before the juror was sworn." [31 Stat. at L. 1338, chap. 854.] The objection now made to the jurors was well known to the defendant, and might have been a "ground for challenge" of each juror. About this there can be no controversy. The question is to be raised by "challenge of a juror," not by objections to the array, such as were made through the motions filed by the defendant. When we speak of the challenge of *a juror* we mean challenge for cause or peremptory challenge. This is the usual import of the phrase, and statutes are to be construed according to the "ordinary and natural signification" of the words employed, where possible. *Mackell* v. *District of Columbia,* 16 App. D. C. 301; *Duehay* v. *District of Columbia,* 25 App. D. C. 434. The Supreme Court of the United States dealt with this section in *Johnson* v. *United States,* 225 U. S. 405, 420, 56 L. ed. 1142, 1147, 32 Sup. Ct. Rep. 748, and sustained and applied it. The court in

the majority opinion ignores this section, and gives it no effect whatever; yet I think it clearly forbids the granting of a new trial.

The next ground upon which a new trial is awarded is the refusal of the court at the close of the government's testimony to require the prosecution to specify the two offenses upon which it would ask a conviction. In the light of the facts disclosed by the record, there was, I think, no prejudicial error in this. Before any testimony was introduced, the government announced that the offense charged in the first count was committed between February 23 and March 15, and the one laid in the second count, between March 15 and April 10. At the close of the government's testimony it appeared that one of the offenses under the first count occurred in a certain hotel and all others in a named apartment house; and that the offenses relating to the second count were committed in another apartment house between March 15 and April 10. This fixed the time and place of each crime with comparative definiteness, yet perhaps not sufficiently so if the quantum of evidence offered by the defendant with respect to certain of the offenses was different from that produced as to others. Then it might be said with force that it was unfair to permit the government to postpone its election until it could select the crimes against which the weakest defense was made. But nothing of that kind could occur here, because the weight of the defense was the same as to each charge. Outside of testimony bearing upon the character of witnesses for the government, defendant produced none save his own, and that was a denial of all the offenses alleged. The government gained no advantage, nor did the defendant suffer any prejudice by the court's action.

Before the arguments to the jury commenced, the government specifically pointed out the two offenses for which it would claim a conviction. Defendant urges that this did not give his counsel sufficient time to prepare for the presentation of his case to the jury; but his counsel did not seem to think so at the time, for he made no application to the court for a postponement of the argument.

The time and nature of the election which should be made in a criminal case is largely in the discretion of the court, and its action in that regard will not be disturbed where it does not appear that injury might have resulted therefrom to the defendant. *State* v. *Schueller,* 120 Minn. 26, 138 N. W. 937, 938; *State* v. *Hughes,* 258 Mo. 264, 167 S. W. 529, 530; *State* v. *Crimmins,* 31 Kan. 376, 2 Pac. 574. The mere possibility of prejudice is not enough. *Yeager* v. *United States,* 16 App. D. C. 356, 358.

Defendant filed a motion for a new trial in which he assigned ten errors. He made no specific reference therein to either of the grounds upon which this court grants him a new trial, nor did it embody any assignment sufficiently definite under which to raise either question. *Lincoln* v. *Sun Vapor Street Light Co.* 8 C. C. A. 253, 19 U. S. App. 431, 59 Fed. 756; *Oswego Twp.* v. *Travelers' Ins. Co.* 17 C. C. A. 77, 36 U. S. App. 13, 70 Fed. 225; *Sovereign Camp, W. W.* v. *Jackson,* 38 C. C. A. 208, 97 Fed. 382. 388. It appears, then, that he did not seriously believe in the lower court that the jury was unfair, or that he had been injured by the court's failure to require an earlier election. This suggests the thought that those contentions are now made, as was said in *Johnson* v. *United States, supra,* as a "makeweight."

I think that sec. 874 of the District Code [31 Stat. at L. 1332, chap. 854], and not sec. 316 of the Federal Code [35 Stat. at L. 1149, chap. 321, Comp. Stat. 1916, sec. 10,489], provides the punishment that should be inflicted for the crime of adultery, but I do not think that the question is ruled by the decision in *Johnson* v. *United States,* 38 App. D. C. 347; 225 U. S. 405, 56 L. ed. 1142, 32 Sup. Ct. Rep. 748. That case arose under chapter 11 of the Federal Code, wherein the language restricting the operation of the chapter is quite different, as the court points out, from that used to limit the operation of chapter 13, under which the defendant was sentenced. But this last-mentioned chapter declares that the crimes mentioned in it, among which is adultery, shall be punished as therein prescribed "except as otherwise expressly provided."

As observed in the opinion of the majority, it *is* otherwise expressly provided in sec. 874 of our Code, and, therefore, the sentence should have been under that section.

I have examined all the other assignments of error, and think they should be rejected as unsupported by anything in the record. The jury was lucidly and correctly instructed as to the law of the case, and the defendant had in all respects a fair trial. While the case should be remanded for sentence under sec. 874, a new trial should not be allowed.